THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD E. McALEER, Defendant-Appellant.

(No. 75-68;

Fifth District—December 23, 1975.

822

Thomas M. Welch, of Welch, Welch & Welch, of Collinsville, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

A jury found the defendant, Howard McAleer, guilty of the crime of arson. Subsequently, the court sentenced him to 3 years' probation, a condition of which he was to pay a fine of $500 and court costs.

In his brief, the defendant lists 15 issues presented for review. Many of these issues are repetitive and have not been discussed in the argument portion of the brief. From our reading of the defendant's arguments we have determined that the following questions are properly presented for review: (1) whether the defendant was proven guilty beyond a reasonable doubt of the offense of arson with intent to defraud an insurer; (2) whether the court erred in admitting testimony concerning a jug of gasoline found in defendant's house after the fire; (3) whether the defendant was prejudiced by the State's failure to comply with the provisions of Supreme Court Rule 412 governing disclosure to the defendant; (4) whether the court erred in denying defendant's motion for a protective order; (5) whether the court erroneously denied the defendant's motion to dismiss the indictment for reason that the State had refused to permit the defendant to take a polygraph test; (6) whether the defendant was denied due process of law because the State held a group meeting of potential witnesses two days before trial; (7) whether the State's failure to supply defense counsel the correct address of prosecution witness Beatrice Miller denied the defendant a fair trial.

The defendant was charged by indictment on February 7, 1974, of burning his own house with the intent to defraud his insurer. Numerous pretrial motions were filed by the defendant, some of which are the subject of issues presented for our review. The controversies surrounding these pretrial motions will be discussed later in the context of resolving the questions pertaining to them. Before presenting witnesses the parties stipulated to the existence of a contract for the sale of the

burned property and of a valid policy of fire insurance on the house and its contents.

The evidence in this case can best be summarized by considering the events: first, preceding the day of the fire; second, on the date of the fire, December 3, 1973; and third, after the day of the fire.

State's witness Beatrice Miller lived with the defendant at the residence in Washington Park at 5335 Avon Avenue from June, 1972, to November, 1973. She moved out in November after an argument with the defendant. Five days before the fire she removed her furniture from the house. Mrs. Miller testified that on six different occasions the defendant had indicated to her that the house was going to burn, that he had insurance, and that she should remove her furniture. On one occasion, according to her testimony, the defendant offered to split the proceeds from the personalty insurance if she left her furniture in the house.

Karen Williams, a defense witness and employee of a real estate agency, testified that her agency had listed defendant's property and that another agency had produced a prospective buyer. She identified and described an earnest money contract signed on November 5, 1973. Defendant was informed that because of Federal Housing Administration requirements, it would take up to 3 months to approve and close the sale. As a result of the fire the title was never conveyed to the prospective buyer. Two other realtors gave testimony not substantially different from that of Mrs. Williams.

Three firemen who arrived on the scene about 11 p.m. on the night of the fire smelled a "very strong" odor of gasoline. Fireman Richard Schlake testified that his inspection of the house after the fire was contained revealed six separate fires. One fire was started in the living room on the carpet. The next fire was in the kitchen underneath a table where a pile of rags was smoldering. Fireman Terry Shephard corroborated the testimony regarding the smoldering rags. A third fire was also found in the kitchen going down to the basement next to the sink. Schlake found evidence of still another fire in a bathroom closet. There was an additional fire in a utility room or bedroom across from the bathroom. The witness stated that in this room "a bunch of boxes filled with clothes stacked up * * * and a pair of pants and shirts" were found that "had been soaked with some sort of substance." Schlake discovered a sixth fire which had burnt a large hole in the floor of the back bedroom next to the hallway.

State's witness Mary Rose, who worked at a nearby restaurant, testified that the defendant came to her place of employment between 11

p.m. and 12 p.m. on the evening in question. He had smoke and soot on him. The defendant mentioned to Ms. Rose that his house burned down and the firemen were tearing up the house. He told her that it was gas in there and that somebody had thrown it in the house.

Five witnesses, all firemen, testified that the defendant offered them $50 or $60 either to let his house burn down or to reset the fire. One of these witnesses remembered the accused's exact words: "I would give you fifty or sixty dollars to let the place burn down because I could collect it from the insurance." Two of the five witnesses testified to discovering a jug containing gasoline on a shelf in the bathroom closet. A sample of the contents was taken and turned over to the Fire Marshall's office.

Jim Lipchik, an insurance adjuster, met with defendant a day or two after the fire. Defendant submitted a claim for structural damages to the house in the amount of $7,553.88 and $2,523.23 for loss of personalty. Lipchik subsequently executed an agreement with a construction company to restore the defendant's house to its original condition.

Bill Buxton, a fire investigator for the State Arson Bureau, testified that he received a coffee can containing a liquid that smelled like gasoline, which he subsequently gave to Paula Cordosi, a chemist for the Bureau of Investigation. The chemist testified that her tests disclosed that the liquid was indeed gasoline. Buxton examined the house in question to determine the cause of the fire and in his opinion the fire's origin was internal rather than external. He ruled out lightning and a faulty furnace as causes. The fire examiner noted no connection between certain burned electrical wires and other fires in the house. Finally, he testified that his investigation revealed six, unconnected and independent fires.

The defendant appeared at the scene of the fire shortly after the firemen arrived. He testified that earlier that evening he had sprayed his kitchen cabinets, bathroom, baseboards, the bathroom closet, and the stairway leading to the basement with "Real-Kill" in an effort to exterminate roaches. According to his testimony, he left the bottle on the kitchen floor near the basement door, and then propped up a window for ventilation. He then left the house about 5:55 p.m. and went to another piece of property he owned in Fairmont City. While there, he claimed, he received a call from Max Clerkin, a former tenant of his Fairmont City property. Clerkin supposedly said he was out of gas and requested the defendant to bring him some. The defendant related that he then went back to his house on Avon Street, picked up a gasoline can, drove to a gas station where he purchased gasoline, and took it to

Clerkin. Later, the defendant asserted, he went to the Fairmont City addréss and then drove to a tavern. He finally returned to the Avon Street property where he discovered the firemen and firetrucks.

Two expert witnesses testified for the defendant. The first, a petroleum chemist, described the combustible properties of gasoline and "Real-Kill." He conceded that the fire could have been started in a manner suggested by the State's evidence. The second expert, a professor of electrical engineering, testified that he examined an electrical wire that was admitted into evidence and identified as having been taken from the defendant's burned house. Concerning this piece of wire, the expert testified that the wire was either heated internally or was in the presence of a fire. He gave numerous possible explanations for the cause of the charred condition of the wire's insulation.

The State called Max Clerkin as a rebuttal witness. He testified that although he had indeed been a tenant in the defendant's Fairmont City property for a short time, he had not even met the defendant until approximately December 15, 1973. Clerkin explained that he was in Indiana on the day of the fire. On cross-examination, Clerkin admitted speaking to the defendant in late December or early January about the fire. He admitted that he had agreed to and subsequently did tell Fire Marshall Buxton an apparently false story about the gasoline.

The defendant first contends that he was not proven guilty beyond a reasonable doubt because the State's evidence failed to establish any intent to defraud the insurer. This contention lacks merit. Abundant evidence exists in the record to establish an intention to defraud the insurer. ■■ Prior threats to commit arson, though not in themselves convincing of guilt, are highly relevant, and from them, in connection with other circumstances, if believed by the jury, guilt may be logically inferred. (*Carlton v. People*, 150 Ill. 181.) In the instant case, the defendant's paramour testified that he had indicated to her on six different occasions that the house was going to burn, that he had insurance, and would split the proceeds from the personalty insurance if she left her furniture in the house. From these prior threats alone, the jury could have reasonably concluded, in light of the insurance claims submitted, that the defendant burned his own house with the intent to defraud his insurer. There was, of course, additional evidence of defendant's intent to defraud the insurance company. Five witnesses, all firemen at the scene, testified that the defendant offered them $50 or $60 to either let the fire burn or to reset it. One of them specifically remembered defendant's mention of his insurance coverage.

Defendant also contends that the evidence was insufficient to prove beyond a reasonable doubt that he set fire to his property. It is funda-

mental that opportunity to commit a crime, the motive therefore, and the identity of the accused can be proved by circumstantial evidence. (*People v. Wolf,* 334 Ill. 219; *Commerce Union Bank v. Midland National Insurance Co.,* 53 Ill.App.2d 229.) In *Wolf,* the court said:

"It is seldom that the crime of arson can be established by direct and positive testimony of witnesses who actually saw the fire set. The inference of guilt must be drawn in most cases from circumstances satisfactorily proved. A court of review should not disturb the verdict of a jury unless the verdict appears to have been the result of passion or prejudice or unless the evidence is so unreasonable, improbable or unsatisfactory as to warrant a reasonable doubt of guilt." 334 Ill. 219, 230.

Although it is true, as defendant contends, that only where every reasonable hypothesis of innocence may be excluded will a verdict founded on circumstantial evidence be allowed to stand, we submit that the jury was justified in finding no reasonable hypothesis consistent with innocence in this case. Sufficient evidence exists that the defendant, and no one else, set this fire. The possibility that the fire originated accidentally is also conclusively negated.

██ Three firemen who responded to the fire call at defendant's house testified that they smelled gasoline. Two of the firemen found a container of gasoline in the house after the fire in a closet where a fire had started. The defendant admitted being at his house several times just prior to the fire. He also admitted that he had purchased gasoline before the fire on the evening in question, but claimed that he did so for the purpose of taking it to Max Clerkin, who was out of gas. Clerkin, in rebuttal, however, denied even having known the accused at the time of the fire, let alone having requested the defendant to buy gasoline for him.

One fireman observed six separate fires in the house. The investigator for the Illinois State Arson Board also concluded that there were six unconnected fires and that the origin of the fire was internal. He discounted the possibilities that the fire had originated in the furnace, waterheater, or electrical wiring. The physical evidence introduced at trial supports the fire examiner's theory of the causes of the fire and refutes the defendant's theory that the fire somehow originated in the basement and spread elsewhere. Except for defendant's testimony, the evidence in no way suggests that someone else got into the house and started the six fires.

Conflicts in the evidence notwithstanding, it was for the jury to determine the credibility of the witnesses and the weight to be given their testimony. That the jury believed the State's witnesses was within

their province as trier of fact. Accordingly, we find that the jury was justified in reaching the verdict it did.

Defendant next contends that he was unfairly prejudiced by the admission into evidence of testimony regarding a jug and a sample of its contents found on the night in question in a closet of the defendant's house where a fire had originated. We find this contention without merit and note that defendant has failed to preserve this issue for review.

■■ It is well settled that evidence not objected to at trial cannot form the basis for an assertion of error on appeal. *People v. Scott,* 52 Ill.2d 432; *People v. Hamilton,* 27 Ill.App.3d 249.) It is clear that defendant did not object to any of the testimony of which he now complains. Moreover, even if he had and its admission had been error, the defendant acquiesced in the reception of the evidence when he so extensively pursued cross-examination of the witnesses regarding the assertedly improper evidence. The defendant cannot here on appeal predicate error on the admission of evidence of which he sought during the course of the trial to take full advantage.

The testimony concerning the jug and its contents was relevant and it would not have been error to admit it even if defendant had objected. Clearly, one of the issues in this case was whether the defendant set fire to his property. Where the State's case established that the strong odor of gasoline was present when firemen entered the house; where there was testimony that six separate fires were discovered; where testimony showed that some of those fires appeared to have been started by a flammable substance, and one fire, in particular, originated near where the jug was discovered; and where the defendant's testimony established that he had been at his house on the night of the fire after having purchased gasoline and had told a story about what he did with the gasoline, evidence that a container of gasoline was found in a bathroom closet of the burned house was obviously relevant. This evidence tended to show that it was more probable than not that the defendant set the fires in his house.

Defendant has also contended that the State failed to comply with Illinois Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, § 412) by not timely supplying a lab report made upon the alleged contents of the jug. We cannot determine how the accused was prejudiced when the record shows he received this report 77 days before trial. (See *People v. Schabatka,* 18 Ill.App.3d 635.) For this reason, we find that this contention lacks merit.

Defendant argues without citation of authority other than Supreme Court Rule 412 that he was irreparably prejudiced by the State's failure

to supply, prior to trial, the memoranda or statements of the three firemen who testified to smelling gasoline at the fire. The defendant does not claim he was not notified of the existence of these witnesses. His complaint, rather, is that he was surprised by the evidence elicited from these witnesses concerning "the strong odor of raw gasoline."

■■ The first page of the particulars supplied by the State on February 15, 1974 (over 5 months before trial), conveyed to the defendant the following:

"Cause of Fire (Explain) (Suspected Arson)

xx   Six separate fires set in the house. One gallon plastic container with gasoline in it in the closet of the bathroom."

That the State's witnesses might testify to the presence of gasoline or its odors in the house cannot now be said to have been a surprise. The defendant did not object to the testimony of which he now complains. He offers no authority to support his contention that he was prejudiced by the State's alleged failure to comply with the requirements of Supreme Court Rule 412. For either of these two reasons, we would be inclined to deem the point waived. (*People v. Williams*, 28 Ill.2d 104 (failure to object); *People v. Goss*, 20 Ill.2d 224 (failure to cite authority).) He has also failed to show that before or during trial the statements to which he claims he was entitled were in the possession of the State. Consequently, we reject any contention that the defendant was prejudiced either by the State's purported failure to comply with Supreme Court Rule 412 or by the admission of evidence regarding gasoline as the cause of the fire.

■■ Nor do we find that the defendant was prejudiced as a result of the court's failure to grant defendant's motion for a protective order with respect to statements of the firemen regarding defendant's offers to pay them if they allowed the house to burn. This evidence was highly relevant to the question of intent to defraud the insurer, and was thus admissible. Again, we note that the accused failed to object to any of the firemen's testimony and has failed to cite authority. Thus, we would also be inclined to deem any contention in this regard waived.

■■ Furthermore, we find without merit the defendant's novel contention that the State had a duty to allow him to prove, before trial, by means of a polygraph, his innocence of the offense for which he stands accused. Defendant argues that the State's refusal to allow a polygraph test constitutes a denial of due process, equal protection of the law, and fundamental fairness, and therefore, it was error for the trial court to deny his motion to dismiss the indictment. To the extent that defendant's argument rests on constitutional grounds it must be rejected. Defendant himself concedes that the results of the polygraph

test would not have been admissible at trial. *People v. Sanders*, 56 Ill. 2d 241; *People v. Nicholls*, 42 Ill.2d 91.

To the extent that the argument rests on the contention that the trial court erred in refusing to dismiss the indictment, the argument must fail because the law is to the contrary. Trial courts have no power to dismiss an indictment before trial on the defendant's motion except upon grounds provided by statute (Ill. Rev. Stat. 1973, ch. 38, § 114—1). (*People v. Guido*, 11 Ill.App.3d 1067.) Failure to permit a defendant to take a polygraph test is not specified as a ground for dismissal of the indictment in the statute. The trial court, therefore, did not err in refusing to do that which it lacked the power to do.

The defendant further asserts a denial of due process of law resulting from an alleged group meeting of the State's witnesses prior to trial. The defendant filed a motion for a protective order regarding the testimony of all witnesses who attended the "State's Attorney's Group Meeting at the Washington Park Fire Department on July 20, 1974." A pretrial hearing was held on this motion, but the defendant presented no witnesses to support the allegations in his motion. Our review of the record discloses no abuse of discretion by the trial court in denying the motion. ■■ During trial the defendant asked only one witness about the alleged group meeting of the State's witnesses. The question arose after the witness on direct examination had denied having even attended such a meeting or having spoken with the State's Attorney before trial. It is clearly proper for an attorney to interview his witnesses before trial. (*People v. McGuirk*, 106 Ill.App.2d 266.) Even if it be assumed, arguendo, that the alleged meeting was held, absent some showing that the State's Attorney improperly influenced the witnesses' testimony, no error would be shown. We thus find defendant's constitutional argument regarding the purported group meeting not supported by the evidence.

Finally, the accused claims he was denied a fair trial because the State failed to supply defense counsel with the correct address of prosecution witness Beatrice Miller.

Our review of the record shows that the State supplied the defendant with an address for Ms. Miller on February 15, 1974, in its response to defendant's discovery request. The information given the defendant also included a statement dated December 29, 1973, taken from Ms. Miller at the address supplied. Counsel for the defense later visited this address and discovered that it was the address of Ms. Miller's son. The son advised the defense counsel that he knew his mother's new address but would not give it to him. The record, however, also discloses that previous to the son's refusal to divulge her new address, an investigator

employed by defense attorney reached Ms. Miller at the address supplied by the State, but she refused to talk.

■■ A prosecution witness is not obligated to grant an interview to defense counsel. (*People v. Peter*, 55 Ill.2d 443; *People v. Nunn*, 130 Ill.App.2d 86.) A review of the record indicates that the State indeed supplied an address at which Ms. Miller was reached by defense counsel's investigator. Defendant's disappointment in Ms. Miller's refusal to answer questions cannot provide grounds for reversible error.

For all of the foregoing reasons, we affirm the judgment of the Circuit Court of St. Clair County.

Affirmed.

EBERSPACHER and G. J. MORAN, JJ., concur.