(No. 37203.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES EDWARD SPRINKLE, Plaintiff in Error.

*Opinion filed March 25, 1963.*

JOHN VERKLAN, of Joliet, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and FRANK H. MASTERS, JR., State's Attorney, of Joliet, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant was found guilty of burglary at the conclusion of a five-day jury trial in the circuit court of Will

County, and was thereafter sentenced to imprisonment for an indeterminate term of one year to life. He now brings the cause to us by writ of error, contending that the court erred in ruling defendant's confession to have been voluntarily made, and, further, that the trial judge usurped the functions of counsel during the trial in a manner that indicated to the jury the judge's belief that the defendant was guilty and thereby deprived defendant of a fair trial.

The facts establish a brutal assault upon the complaining witness and an ensuing burglary of her home. Defendant, a 17-year-old youth, confessed the assault and forcible entry of the home, but contended on the trial that the confession was the result of being confined for three days and nights in a so-called "sweat box", an admittedly uncomfortably warm area involving the mezzanine cell block of the county jail, in which defendant testified it was so hot he could neither eat nor sleep, and from which he was transferred following his confession. A substantial portion of the record is devoted to conditions as they existed in the jail, and the alleged coercion used to secure the confession, but no useful purpose would be served in relating these matters here in view of the result we reach.

We turn at once to a consideration of the problem involving the conduct of the trial judge, and are immediately confronted with the State's contention that the failure of the public defender to object to the comments and questions during the trial and the omission of any specific reference thereto in the motion for a new trial preclude our consideration of this question. We agree that failure to make a proper and timely objection or to specify the objectionable matter in the motion for a new trial should and would ordinarily prohibit its review. However, as we said in *People v. Finn,* 17 Ill.2d 614, 617, "Although no objection was made by defense counsel to the remarks as the reporter read them, and although the record does not show any objection to them either during or after the trial, under the

circumstances it is our opinion that the record was infected with error upon the occasion of the sanity hearing and the defendant is, therefore, entitled to a new hearing and trial. However strong the evidence against an accused may be, and in this case the defendant was caught in the house he was burglarizing with some of the stolen property in his pockets, a fair trial, in all its stages, is a fundamental requirement in a criminal prosecution and when such requirement is not met, it amounts to a denial of due process of law. *Lisenba* v. *California,* 314 U.S. 219, 86 L. ed. 166; *Powell* v. *Alabama,* 287 U.S. 45, 77 L. ed. 158." And in *People* v. *Moore,* 9 Ill.2d 224, 232, we quoted with approval from *Belfield* v. *Coop,* 8 Ill.2d 293, 313, as follows: "If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon".

In our judgment this reasoning applies even more forcefully to the situation before us. The conduct complained of here consists of actions of the trial judge. The making of an objection to questions or comments by a judge poses a practical problem for the trial lawyer. It can prove embarrassing to the lawyer, but, more importantly, assuming that most juries view most judges with some degree of respect, and accord to them a knowledge of law somewhat superior to that of the attorneys practicing before the judge, the lawyer who objects to a comment or question by the judge may find himself viewed with considerable suspicion and skepticism by the very group whom he is trying to convert to his client's view of the facts, thereby perhaps irreparably damaging his client's interests. If he fails to object, he may, on appeal, be faced, as defendant here is, with the claim that his failure to act has precluded

consideration of the error, and it is not always a sufficient answer to this situation to say that the objection can be made and ruling secured outside the hearing of the jury. It is particularly incumbent upon the trial judge to exercise a higher degree of care in his comments regarding, or interrogations of, witnesses before a jury in order to avoid influencing the jurors to any extent, and we therefore hold that a less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge than is otherwise required.

The record in this case contains questions and comments which have no place in the conduct of a trial before a jury. They commence with the complaining witness, an elderly woman somewhat rambling and unresponsive in her testimony, apparently due to her advanced years, who was asked by the presiding judge, at the conclusion of her testimony, how old she was. Upon her response that she would be eighty-five, the court commented, "God bless you". Later the trial court commented to the witness: "I think you are marvelous", and then proceeded to question the witness as to whether she remembered anything about the man "who beat you at your house." The court was informed by the State's Attorney that the witness had been unable to identify the defendant, following which the court asked the witness: "The first time you have seen this man, since that time, was today?" It seems apparent to us that the jury might infer from this that the defendant was actually the criminal, in the opinion of the judge, even though the witness was unable to identify him as such.

A further example of the error which requires a remandment of this case is found in the court's examination of the defendant's father who testified as to the defendant's presence at home during the time when the alleged crime occurred. The court's examination of the father commenced

with the question: "How many times has your son been in a lawsuit?", continued with "You are quite familiar with court procedure, how trials are conducted?". "How did you know how to direct them (trials)?", and concluded with "You helped Mr. Vinson (the defendant's lawyer) set up this defense?". The implication of these questions to the defendant's father is obvious. In the minds of the jury they could leave but one impression: that the defendant was a frequent law violator, and that the father was well acquainted with trial court procedure, sufficiently so to take an active part in directing the defense of his son's trial. That this represented the court's opinion is further demonstrated by the court's reference to defendant's father as "co-counsel" (made in the jury's absence). Further difficulty appears in the court's comment that the witness was "slower than cold molasses" when, on cross-examination, the defendant's father evidenced some confusion in answering the prosecutor's questions. The trial judge also stated (outside the presence of the jury) that he had to be on the side of the public officials.

It would unduly lengthen this opinion and serve no useful purpose to detail other instances in which, in our judgment, the court abused its discretion in questioning the witnesses. The net effect of the court's examination was to convey to the jury the impression that the sheriff and his deputies were not responsible for the abnormally warm condition of the jail, and were doing the best they could with inadequate physical facilities, and to impugn the credibility of some defense witnesses. While the trial court may have correctly assessed the factual situation, including the character of the defense witnesses, this does not alter the defendant's constitutional right to have his case heard and determined by a jury of impartial individuals free from influence or intimation by the trial court as to the guilt of the defendant.

As we said in *People* v. *Marino,* 414 Ill. 445 at 450:

"While the court has a wide discretion in the conduct of a trial, it must not invade the province of the jury by making comments, insinuations or suggestions indicative of belief or disbelief in the integrity or credibility of a witness. [Citing cases]. In all criminal prosecutions, the accused persons, guilty or innocent, are entitled to a fair and impartial trial by jury. A fair trial contemplates that the jury will, alone, fulfill its duty of determining the facts, and it is not the province of the judge, in a criminal case, to express by word or indicate by conduct, in the jury's hearing, any opinion upon the facts. [Citation.] While it is true that a judge has a right to question witnesses or call other witnesses to the stand in order to ascertain the truth or to bring enlightenment on material issues which seem obscure, he must do it in a fair and impartial manner without showing bias or prejudice against either party. [Citation.] Jurors are ever watchful of the attitude of the trial judge and his influence upon them is necessarily and properly of great weight, thus his lightest word or intimation is received with deference and may prove controlling. In a criminal trial, a hostile attitude toward an accused, or his witnesses, is very apt to influence the jury in arriving at its verdict." See also *People* v. *Santucci*, 24 Ill.2d 93, 98; *People* v. *Wesley*, 18 Ill.2d 138, 154, cert. den. 364 U.S. 845, 5 L. ed. 2d 69, 81 S. Ct. 87.

We are compelled to conclude that the questions and comments of the trial judge complained of here were unnecessary to the conduct· of the trial. Since a substantial question was presented for the jury's decision, we cannot say that the improper questions and comments of the court were harmless error. The defendant may have been prejudiced in the eyes of some or all of the jurors, and the cause must be remanded for a new trial.

The judgment of the circuit court of Will County is therefore reversed, and the cause remanded for a new trial.

*Reversed and remanded.*