THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARVIN DUNCAN, Defendant-Appellant.

First District (1st Division)　No. 76-1208

Opinion filed May 31, 1977.

James Geis and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Mary C. Shropshire, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Marvin Duncan was charged by one indictment with the armed robbery of Everlean Hoskins and charged in another indictment with the armed robbery of Pringle Davis. He was found guilty of both charges after a bench trial in the circuit court of Cook County and was sentenced to imprisonment for from 4 to 10 years.

Defendant appeals from his convictions, contending that the trial court erroneously considered inadmissible evidence, the effect of which was so prejudicial as to deny him a fair trial where (1) testimony by police officers and another witness concerning out-of-court identifications of the defendant was hearsay and (2) a police bulletin containing defendant's photograph among photographs of purported gang members, admitted into evidence, was evidence of other police contact and not probative of his guilt of the crimes charged.

The robberies of both victims took place at about 8 p.m. on July 16, 1974, in a tavern on the far south side of the City of Chicago. Everlean Hoskins testified at trial that she was tending bar in the tavern that evening when defendant Marvin Duncan and another man entered the premises and purchased beers. They drank sitting at the bar. After about ten minutes, Duncan arose from his seat, went to the front door and closed it and the other man produced a gun and announced the robbery. She testified that the defendant went through the pockets of the customers, while the other man held a gun at her head and emptied the cash register of money. Ms. Hoskins testified that the lighting was good and that she had an opportunity to view the men for 15 minutes from the time they entered the tavern until they left. She pointed out Marvin Duncan at trial as one of the robbers.

Henry Warren testified that he was present in the tavern at the time of

the robbery. When he heard someone announce the "stick up," he looked up and observed a man holding a gun at the head of Everlean Hoskins and another man taking money from the patrons. Warren pointed out defendant Duncan at trial as the man who took money from him. He also saw Duncan take money from Pringle Davis.

The police arrived within five to ten minutes after being called by Ms. Hoskins immediately after the robbers left. Both Ms. Hoskins and Warren testified that they selected Marvin Duncan's photograph out of a stack of 30 loose photographs provided by the police, independently of each other. Each thereafter selected defendant's photograph out of a police newsletter or bulletin containing photographs of 32 individuals.

Warren testified that he picked defendant out of a lineup conducted at a police station four days later.

The investigating police officers testified to the photographic identifications of defendant by Ms. Hoskins and Warren. They also testified to declarations made by Pringle Davis in their presence to the effect that he identified the defendant's photograph from the stack of loose photographs and from the police bulletin and that he identified the defendant out of the lineup conducted four days after the robbery. Warren had also testified that Pringle Davis had made a photographic identification of defendant. No objection was made by defense counsel to any of these out-of-court declarations reported by the police and Warren.

Pringle Davis was not called to testify; the prosecutor asserted that he was, to the best of their knowledge after a diligent search, out of the State and unable to be contacted. The court denied the prosecutor's motion to admit a transcript of Davis's preliminary hearing testimony into evidence. The police bulletin from which Ms. Hoskins, Warren and (according to the police testimony) Davis identified a photograph of the defendant was admitted into evidence without any objection by defense counsel.

Defendant testified and denied any participation in or knowledge of the robbery. To show lack of motive, he testified that he had been employed at the same job for seven years and earned $5 per hour. On the night of the robbery he was at home the entire evening from 5 p.m. until 5 a.m. the next morning, in the presence of his mother and a young woman with whom he slept. Three days after the robbery he received a telephone call from the police informing him that he was wanted for questioning on the robbery charges. He went to the police station, where he told a policeman who he was and asked what they wanted him for. At that point he was arrested and placed in a lineup. He denied membership in any gang and asserted that the man identified by the victims as his partner in the robberies (who had pleaded guilty to the charge several months before Duncan's trial) would not know him if he were present. He explained the presence of his photograph in the police bulletin as resulting

from his being arrested with an individual, who was a member of the gang described therein, several years before. When he was asked by his attorney what the disposition was of that charge, the judge sustained an objection by the prosecutor.

Defendant's mother testified on his behalf that on the evening of the robbery her son had come home from work at about 5 p.m. and had not left the house until the next morning. While she admitted that he was not in her presence all evening, she testified that no one could leave or enter the house without her hearing the disturbance. She testified that a woman friend of defendant arrived at about 7 p.m., went with the defendant to his room and did not leave until morning.

The young woman testified that she was employed at Mount Sinai Hospital and studying nursing in college. On the day of the robbery, she received a telephone call from defendant shortly after 5 p.m. and went to his home, arriving at 7 p.m. She stayed with defendant all evening and slept with him that night and he did not leave her presence from 7 p.m. until 5 a.m. the next day.

After hearing arguments of counsel, the court found Marvin Duncan guilty of the armed robbery of Everlean Hoskins and guilty of the armed robbery of Pringle Davis and entered judgment on his findings.

■■ Defendant argues that the testimony of the police officers and Warren that Davis had identified defendant was hearsay and its admission constituted plain error, so that his failure to object in the trial court to this testimony did not waive his right to argue its prejudicially reversible effect on appeal. We agree with the State that this argument has been waived. The supreme court discussed the necessity for objections to preserve trial errors for review in *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820:

> "The function of the objection is, first, to signify there is an issue of law, and, secondly, to give notice of the terms of the issue. An objection to the admission of evidence, to be available, must be made in apt time, or it will be regarded as waived. The general rule is that the admission of incompetent evidence must be objected to, if at all, at the time of its admission. Objections to evidence should designate the particular testimony considered objectionable and point out the objectionable features complained of. Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike it out after its admission, giving specific reason for the objection or motion to strike out such evidence generally constitutes a waiver of the right to object and cures the error, if any. Likewise, objection to the admission of other secondary evidence or the contents of a written instrument or record is

waived by failure to object that it is not the best evidence. A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial."

Nor did the defendant's post-trial motion save the question for review. One of the grounds specified in the post-trial motion was: "The court improperly and prejudicially allowed hearsay evidence to be used by the prosecution in an effort to reach or sustain their burden of proof; absent the improper and hearsay testimony the state was without ability to prove the allegations of the indictment." Nowhere is it specified whose hearsay is complained about or the subject matter of the hearsay. It was insufficient to bring the alleged errors to the trial court's attention and we will not consider the matters for the first time on review. *People v. Bell* (1975), 27 Ill. App. 3d 171, 176, 326 N.E.2d 507, 511.

In support of his claim that the admission of hearsay evidence was plain error, defendant cites Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) and *People v. Wright* (1965), 65 Ill. App. 2d 23, 212 N.E.2d 126. The record in *Wright* consisted of the testimony of the complainant as to the crime and the testimony of two police officers as to what the complainant had told them about the crime. The court reversed the conviction because:

"In the case at bar the defendant's connection with the crime rests upon the identification of a single witness. The testimony of the police officers with regard to the identification of defendant by [complainant] was incompetent as hearsay. The error in admitting the testimony was further amplified by the prosecutor referring to it in his argument to the jury. See People v. Reeves, 360 Ill. 55, 64, 195 N.E. 443. The probative value of the officers' testimony is not enhanced by the fact that it was received without objection. People v. Harrison, 25 Ill. 2d 407, 414, 185 N.E.2d 244. Nor can the error in admitting the testimony be regarded as harmless in view of the fact that defendant was identified by but one witness. Such testimony might have bolstered the identification and might have given the effect of corroboration. * * *" 65 Ill. App. 2d 23, 34, 212 N.E.2d 126, 131.

It is clear to us that the court considered significant that there was only one witness who identified the defendant and that it was a jury trial. In the case at bar, Duncan was positively identified in court by two victims of the armed robberies, who had ample opportunity to observe him before and during the commission of the crimes and who corroborated each other without hearsay. Furthermore, the trial was to the court sitting without a jury and a trial judge in such circumstances is presumed not to have considered incompetent evidence unless it

affirmatively appears in the record that he did. (*People v. Clarke* (1971), 50 Ill. 2d 104, 108, 277 N.E.2d 866, 869.) This presumption can be rebutted by showing that the trial court was "misled or improperly influenced as would be indicated by a judgment or sentence contrary to the law or the evidence." (*People v. Collins* (1974), 21 Ill. App. 3d 800, 806, 315 N.E.2d 916, 920.) The presumption was not rebutted here, where competent evidence was introduced sufficient to prove defendant guilty of the crimes charged beyond a reasonable doubt. Everlean Hoskins testified that defendant's partner, armed with a gun, took money from her and Henry Warren testified that defendant took money from Pringle Davis. Both witnesses pointed out defendant at his trial as one of the robbers. See Criminal Code of 1961, sections 18—2, 5—2(c) (Ill. Rev. Stat. 1973, ch. 38, pars. 18—2, 5—2(c)).

We conclude that admission of the testimony in question was not plain error and it will not be considered. Supreme Court Rule 615(a) "does not mandate that a reviewing court consider all errors involving substantial rights whether or not the same have been brought to the attention of the trial court." *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857-58.

■■ Defendant's assertion that the admission into evidence of the police bulletin containing his picture was reversible error is also claimed to be waived by the State. Defendant raised no objection to its admission into evidence at trial and utilized the document during cross-examination of the witnesses for the State. The cross-examination, which sought to advance defendant's defense of misidentification through use of the document, amounted to an acquiescence in the evidence's admission. "The defendant cannot here on appeal predicate error on the admission of evidence of which he sought during the course of the trial to take full advantage." (*People v. McAleer* (1975), 34 Ill. App. 3d 821, 828, 341 N.E.2d 72, 77.) While defendant did mention the admission of the bulletin in his motion for a new trial, it appears from that motion that his argument's basis has changed on appeal. Where the reason advanced on appeal to support a claim of error was not presented to the trial court, the error is waived. *People v. Bell* (1975), 27 Ill. App. 3d 171, 176, 326 N.E.2d 507, 511.

■■ Even if the issue were not waived, we do not find that the admission of this document was error. The police bulletin consisted of a four-page leaflet containing 32 photographs of persons. The title of the bulletin identified it as a publication of the "Chicago Police Department—Confidential—for Police Use Only." The caption over the photographs on each page was "Known and Suspected Members of the Royal Family." The text on the first page indicated that the Royal Family was a gang which the police had identified as being involved in a number of armed

robberies. The text went on to notify the reader that several of the pictured persons were wanted on outstanding warrants and that these persons were "considered dangerous and should be approached with extreme caution." The photographs presented a view of the persons from the chest upwards, facing forward. Under each was printed a name, address and description.

If the exhibit had been offered into evidence as proof of other crimes or arrests, there is no doubt it would have been inadmissible for that purpose and highly prejudicial. (*People v. Lewis* (1962), 25 Ill. 2d 396, 185 N.E.2d 168; *People v. Blakely* (1972), 8 Ill. App. 3d 78, 289 N.E.2d 273.) But the record is clear that this was not the purpose for its introduction. Duncan presented a defense of misidentification, supported by an alibi. It became incumbent upon the State to show that the identifications made by the victims were proper and accurate. The first identifications were made from the stack of 30 loose photographs shown to the witnesses immediately after the robbery; these photographs were not preserved by the police as evidence and therefore were not offered at trial. The witnesses testified that the bulletin was next presented to them and that they identified Duncan's photograph and that of his accomplice out of the bulletin. Therefore the exhibit was relevant to the issue of the circumstances of the identification, as probative of the State's assertion that a positive photographic identification of defendant had been made soon after the robbery occurred.

■■ The fact that the exhibit indicated gang membership and prior police contact by the persons pictured therein must be balanced against the complaining witnesses' testimony that they took no notice of the writing on the bulletin when making their identifications and the probative value of the exhibit on a matter in issue. (*People v. Adams* (1974), 22 Ill. App. 3d 665, 668, 318 N.E.2d 278, 281.) Having examined the exhibit, we do not feel that the prejudice to defendant outweighed the probative value of the exhibit; therefore, the trial judge did not abuse his discretion and did not commit plain error in admitting the exhibit into evidence. We note again that when a trial judge sits as the trier of fact, he is presumed to consider only competent, admissible evidence in reaching his finding of guilt. (*People v. Clarke* (1971), 50 Ill. 2d 104, 108, 277 N.E.2d 866, 869.) Here, where the document was relevant to a fact in issue, we must presume that the trial judge did not consider the inadmissible and prejudicial inferences which could have been drawn from its contents, since there is no evidence whatsoever to the contrary. In fact, two witnesses made positive in-court identifications of defendant.

■■ The defendant argues that he was especially prejudiced by admission of the exhibit where the court refused to allow him to testify as to the disposition of the charge upon which he had been arrested and

which was the occasion for the taking of his photograph by the police. We find that the judge properly sustained the objection where the matter was collateral and not in issue at trial. (*People v. Hairston* (1973), 10 Ill. App. 3d 678, 685, 294 N.E.2d 748, 753.) Defendant did testify that he was not a member of the Royal Family gang and that his picture was included in the bulletin only because he had been arrested with a person who was a member of that gang. Thus, he had given his explanation for his picture's presence in the bulletin and whether he was convicted or acquitted of the underlying charge when his photograph was taken was irrelevant to his guilt or innocence of the robberies charged. See *People v. White* (1972), 7 Ill. App. 3d 1084, 1090, 288 N.E.2d 705, 709.

For all of the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.