THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KERMIT CHRISTMAS, Defendant-Appellant.

First District (1st Division)   No. 77-514

Opinion filed November 7, 1977.

James J. Doherty, Public Defender, of Chicago (Michael C. Genova and Gail Moreland, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Ann Miller, and Michael Boyle, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Kermit Christmas was charged by indictment with rape and was found guilty by a jury in the circuit court of Cook County. He was sentenced to imprisonment for from five to 15 years.

On appeal, his sole contention is that the trial court erred by impermissibly acting on the side of the prosecution by rehabilitating a prosecution witness who had been impeached by the defense.

While the defendant does not challenge the sufficiency of the evidence to prove him guilty, a brief statement of facts is necessary to consider the examination of the witness by the court in context.

The complaining witness testified that she had been introduced to the defendant by one Hawkins, who had brought the defendant to her apartment. The defendant hired her to work in his tailor shop and she reported to work there a few days later. On the third day of her employment, at about 10 a.m., the defendant deliberately brushed against the back of her body; she told him to stop. The defendant began a conversation concerning his plans for making money with complainant, but she told him she would be going to work for the Chicago Transit Authority any day. The defendant then grabbed her by the wrist. She tried to fend him off with a pair of scissors, but he twisted her arm so that she dropped them. The defendant picked her up and carried her over his shoulder to a back room, where he threw her on a cot. He held her wrists over her head in one of his hands and with his other hand removed her garments and his trousers. She struggled against him, but he penetrated her vagina with his penis. She was able to escape when he completed the act and ran out of the shop to the corner, where she first telephoned Hawkins, then the police. She told both Hawkins and the police that defendant had just raped her.

The police arrived within five minutes of her call and took her back to the tailor shop, but the door was locked and no one responded to their knocks. The police then took her to the hospital, where she was examined by a doctor. Her roommate, Shirley Norwood, picked her up at the hospital and she told her that she had been raped.

On cross-examination, she admitted that the defendant had neither struck nor threatened her. Her working arrangement with the defendant was that she would share in the profits from suits he had patterned and sold and which she had sewn.

The State called Hawkins, Norwood, a doctor and two police officers, who corroborated the complaining witness's testimony. It was stipulated that a laboratory analysis of a sample of fluid taken from the complainant's vagina by the doctor revealed the presence of sperm.

The defendant testified that when the complaining witness arrived at the tailor shop that morning she appeared to be "high" and demanded money, saying she was taking another job. He told her she had no money coming until the suits were completed and sold and that since she had not yet finished sewing the suits, he could not pay her. She became angry, called him names and picked up a pair of scissors and attempted to stab him. He grabbed her by the wrists, knocked the scissors out of her grip and, holding her with one hand, unlocked the door and pushed her out of the shop. After a few minutes, he went home and told his wife what had happened. He later returned to the shop and learned from his neighbors that the police were looking for him because the complaining witness had accused him of rape. He did not go to the police for eight days until he could raise money for his bond. He did turn himself in voluntarily.

On cross-examination, he denied calling the complaining witness or Norwood and offering $500 if the charges would be dropped.

The State called several rebuttal witnesses, including the police officers who testified that defendant never said he was attacked with scissors by the complaining witness. The State also recalled Norwood, who testified that she had heard the defendant speak when he came to the apartment and was introduced by Hawkins to the complaining witness. The day following the alleged rape, she answered the telephone and heard a man's voice, which she recognized as that of the defendant. The voice asked for the complaining witness, who picked up an extension telephone while Norwood listened. The voice asked, "Why are you doing this?" and "Why don't you just take $500?"

On cross-examination, Norwood testified that she had never heard the defendant's voice on the telephone prior to the call and that she had only heard his voice once before, on the date defendant and Hawkins were at her apartment talking to the complainant about the job. On that occasion, the defendant did not speak to her directly, but conversed with the complainant and Hawkins in her presence. Defense counsel then asked:

> "Q The only reason you are testifying today that that was his voice is because the voice said it was Kermit Christmas? Your testimony is based upon this voice the first time you had ever heard it over the phone saying it was Kermit Christmas?
>
> A But, you know—
>
> Q Now, you don't know whether it was Kermit Christmas or not?
>
> A No."

The court then inquired of the witness as follows:

"THE COURT: Miss Norwood, this alleged conversation that took place while Mr. Hawkins and Marie and you were in the apartment with Mr. Christmas, how long did this conversation take place?

A That was the first time he brought him over and introduced him to Marie.

THE COURT: You were there?

THE WITNESS: Yes, I was there.

THE COURT: How long did this entire conversation take place?

A They talked and introduced themselves, maybe about a half-hour, and then they left.

THE COURT: You were in the room all the time?

THE WITNESS: Back and forth.

THE COURT: Back and forth. Well, during this half-hour, what portion of the time were you in the same room with Mr. Christmas?

A When they all came over, Hawkins introduced Marie to Christmas. I was in the room also.

THE COURT: You heard him talking?

THE WITNESS: Right, because we were all sitting in the dining room, you know. I think I gave them some water or wine, or whatever.

THE COURT: Now, this alleged telephone conversation that took place, when did you first recognize the voice?

THE WITNESS: As soon as he said, 'Hello.' He said, 'Why are you . . .'—I recognized his voice when he said, 'Why are you doing this?' That is when I recognized who he was and I told Marie to pick up the phone.

THE COURT: Thank you very much."

■■■ Defendant argues that the court's interrogation, rehabilitating a State's witness, was error. The State argues that this issue is waived because the defense did not object at trial and did not raise the issue in the written post-trial motion. Failure to object to the court's examination during the trial before a jury, while not condoned, is an understandable trial tactic. (*People v. Bernstein* (1911), 250 Ill. 63, 66, 95 N.E. 50, 51.) But failure to include the issue in a written motion for a new trial, directed only to the court and with no hazards of alienating a jury, is not excusable. (*People v. Miller* (1977), 47 Ill. App. 3d 412, 415, 362 N.E.2d 22, 24-25.) The issue has been waived because it was never brought to the attention of the trial court. *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820.

■■ Defendant argues that the interrogation was plain error and thus should be considered, citing Supreme Court Rule 615(a) (58 Ill. 2d R. 615(a)), which states in part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The rule is permissive only and does not mandate that this court consider all errors to be "plain error." (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Duncan* (1977), 49 Ill. App. 3d 461, 467, 364 N.E.2d 478, 482.) The substance of the complained-of examination by the court was collateral to the issue of defendant's guilt because it related only to whether the rebuttal witness could have recognized the voice on the telephone as that of the defendant. Because this was an evidentiary matter not directly probative of defendant's guilt or innocence and defendant does not challenge the sufficiency of the evidence, his "substantial rights" were not affected and we need not consider the issue under Rule 615(a).

The trial court's inquiry was directed toward resolving an ambiguity in the testimony of the witness, because she had testified on direct examination that the caller identified himself as the defendant and she recognized his voice, but on cross-examination she testified that he did not say who he was and that she had not recognized the defendant's voice. It is within the discretion of the trial court to question a witness in order to clarify ambiguous testimony so long as the court does not assume the role of advocate. (*People v. Trefonas* (1956), 9 Ill. 2d 92, 100, 136 N.E.2d 817, 821; *People v. Warren* (1976), 43 Ill. App. 3d 1064, 1067, 358 N.E.2d 27, 30.) To afford a defendant a fair trial, the trial court was not required to " ' * * * play the part of an owl, merely gazing at the participants and looking wise. He must observe with care and seek to understand the issues and the testimony.' " (*People v. Hanley* (1977), 50 Ill. App. 3d 651, 656, 365 N.E.2d 676, 680, quoting *People v. Gaston* (1967), 85 Ill. App. 2d 403, 408, 229 N.E.2d 404, 406.) We do not feel that it was an abuse of discretion for the trial court to have conducted this examination, because the ambiguity in the testimony of the witness was obvious. The transcript reveals no advocacy by the court or bias toward either side. We note that the defense cross-examined the witness again at the close of the court's examination and the witness repeated that the caller did not identify himself by name.

Finally, the trial court admonished the jury through the giving of Illinois Pattern Jury Instruction Criminal No. 1.01, "Neither by these instructions nor by any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be." This instruction has been considered to help cure any possible inference of judicial advocacy. (*People v. White* (1973), 16 Ill. App. 3d 419, 426, 306

N.E.2d 660, 666.) There was no error in the conduct of the court.
Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.