THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORVILLE MILLER *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 79-82

Opinion filed June 30, 1981.—Rehearing denied August 14, 1981.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Defendants Orville Miller and Rudy Bell were found guilty of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) by a jury, and they each received a sentence of 100 to 200 years. They contend that their convictions should be reversed for the following reasons: (1) they were not proved guilty beyond a reasonable doubt; (2) the testimony of the State's chief witness that she told a priest about the incident several weeks before informing the police constituted reversible error; (3) it was error to admit into evidence shotgun shells seized during the arrest of defendant Bell's brother for a separate offense; (4) they were denied due process because the State concealed the surname of any eyewitness; and (5) the court erred in refusing to grant defendants' motions for a new trial based upon newly discovered evidence. We affirm.

During the early morning hours of April 2, 1977, the victim, Tyrone Smith, drove to the airport to meet his aunt. He was accompanied by his mother as well as his girlfriend, LaDonna Dixon, and Dixon's child. They arrived at the victim's house at 7948 S. Union in Chicago at approximately 2:30 a.m. While standing in front of his house, the victim shouted to the driver of an approaching automobile to turn on the car's headlights. At this point, some men exited the car and shot and killed the victim.

Audrianna Thomas testified that she and a friend named Robert Anderson were standing a few doors north of 7948 S. Union when the shooting occurred. She saw four people get out of a dark blue car when it pulled alongside the victim's car. She then saw guns go off and recognized the two defendants as two of the offenders. Thomas and Anderson left Union Street shortly after the shooting. Thomas did not inform the police that she was an eyewitness to the crime until almost a month later. Neither defendant testified, but both presented alibi witnesses. Several witnesses called by defendant Bell testified that he was attending a party in Milwaukee, Wisconsin, at the time of the occurrence. Defendant Miller presented a witness who testified that Miller was with her at her home at the time.

Defendants' first contention is that the State failed to prove them guilty beyond a reasonable doubt. They maintain that Thomas' testimony, which was essential to the State's case, was incredulous. Thomas testified that she and Robert Anderson went for a drive around midnight on the night of the incident. Anderson drove to Union Street around 2:30 a.m. Anderson told Thomas that he was going somewhere to gamble. Thomas followed him as he got out of the car, and she told him that she wanted to go home. When the victim pulled his car up in front of his house, Thomas looked to see who was there. The dome light in the car went on when the doors were opened, and the street was well-lit. Thomas recognized the victim and LaDonna Dixon. Thomas' attention was drawn to another car when she heard someone say, "Hey, man, turn your lights on." She thought the victim was the one who made the statement. The darkened car pulled alongside the victim's car, and four men exited. These men ran around the victim's car, and the witness saw guns go off. Two of these men were carrying long-barreled guns. The witness identified these two men as the defendants. She testified that she did not personally know them but that she had seen them around over the past few years.

■■ Defendants contend that Thomas' testimony was not credible because she misidentified defendant Miller as defendant Bell at trial. In this regard, Thomas testified that she was not personally acquainted with defendants, but that she had seen them around. A friend had identified them to her as Rudy Bell and Bimbo (defendant Miller's nickname). Clearly, the critical fact is that Thomas knew defendants by sight, and not that she knew them by name. She never wavered from her identification of the two defendants as participants in the homicide. The jury, having observed the witness, could reasonably have believed the crucial parts of her testimony. See *People v. Escobar* (1979), 77 Ill. App. 3d 169, 176, 395 N.E.2d 1028, 1033.

■■ Defendants further argue that Thomas' testimony was not believable because she testified that defendants were carrying long-barreled guns, whereas a pathologist testified that he could not classify any of the victim's wounds as shotgun wounds. The pathologist's testimony, however, was that while most of the wounds were consistent with handguns, he was unable to classify those wounds where no pellets were recovered. Moreover, shotgun shells were found near the victim's body. Based on this evidence, the jury's acceptance of Thomas' testimony was not unreasonable.

■■ Defendants also rely on the alibi testimony presented at trial, which they claim showed beyond a reasonable doubt that they could not have been involved in the shooting. Several witnesses testified that Bell was at a party in Milwaukee when the victim was slain. A woman testified that Miller was with her at the time. However, the jury is not obligated to

believe exculpatory testimony presented by a defendant or his witnesses. The positive testimony of one credible witness is sufficient to sustain a conviction even though it is contradicted by other witnesses. (*People v. Daniels* (1979), 76 Ill. App. 3d 646, 651, 395 N.E.2d 163, 167; see *People v. Holdman* (1979), 76 Ill. App. 3d 518, 525, 395 N.E.2d 72, 78.) Thus, we conclude that defendants' argument on this point is without merit.

Defendants next contend that they are entitled to a new trial due to Thomas' testimony that she told a priest about the occurrence several weeks before she informed the police. Defendants argue that this testimony constituted improper use of a prior consistent statement. They further argue that the error was exacerbated by the fact that the person to whom Thomas spoke was a priest, since a jury might find a clergyman more credible than a layman.

■■ Generally, a witness may not testify as to statements he made out of court for the purpose of corroborating his trial testimony relative to the same subject. However, even if we view Thomas' statement as a prior consistent statement which should not have been admitted, it was not prejudicial to defendants. Thomas did not testify as to the contents of the conversation with the priest other than her general statement that it concerned the shooting. She did not testify that she told the priest that defendants were participants in the crime. Therefore, since the testimony as to the prior statements was not directed to defendants' guilt or innocence, its admission was at most harmless error. (*Cf. People v. Arbuckle* (1979), 75 Ill. App. 3d 826, 833, 393 N.E.2d 1296, 1301-02.) Defendants' contention that the error was exacerbated by the fact that it was a priest and not a layman to whom Thomas related her story is untenable. We agree with the State that the fact that the person to whom Thomas spoke was a priest is irrelevant.

■■ Defendants also claim that they were severely prejudiced by Thomas' statement because this was a close case and it took the jury three days to reach a verdict. However, we do not agree with defendants that Thomas' statement to the priest could have affected the verdict. As for the length of the jury's deliberations, that fact cannot transform harmless error into prejudicial error. Defendants also contend that the State emphasized the statement made to the priest during closing argument. However, the only reference made to the conversation during the State's closing argument was a statement that the conversation occurred. Once defendants objected, the subject was not pursued. We conclude that defendants were not prejudiced by Thomas' testimony regarding her statement to a priest. Defendants' arguments in this regard are without merit.

Defendant Bell next contends that the trial court erred in admitting into evidence shotgun shells seized when Bell's brother was arrested more than two weeks before the incident involved here. According to defendant Bell, admission of this evidence denied him a fair trial because it was

irrelevant and was used to show guilt by association based on his brother's conduct.

Prior to trial, defendant Bell presented a motion *in limine* to prevent introduction of these shells into evidence. An expert witness testified concerning comparisons made between a shotgun shell found in the vicinity of the victim's body and two shotgun shells seized pursuant to the arrest of Bell's brother on March 15, 1977. The expert testified that the shell found in front of the victim's house had an extractor mark comparable to an extractor mark on one of the shells seized when Bell's brother was arrested. He further testified that the shells had other markings on them which were dissimilar. The court denied the motion *in limine*. The expert witness testified to essentially the same facts at trial, and his testimony was corroborated by another expert witness.

Physical evidence may be admitted where there is evidence to connect it to both the defendant and the crime. (*People v. Miller* (1968), 40 Ill. 2d 154, 159, 238 N.E.2d 407, 410.) Proof of this connection may be circumstantial. (*People v. Fletcher* (1978), 66 Ill. App. 3d 502, 514-15, 383 N.E.2d 1285, 1295.) The basic question in determining the sufficiency of the nexus is one of relevance. (See *People v. Jones* (1961), 22 Ill. 2d 592, 599, 177 N.E.2d 112, 116; *People v. Dixon* (1976), 36 Ill. App. 3d 247, 253, 343 N.E.2d 583, 588.) The evidence is admissible if it fairly tends to prove the particular offense charged, and any circumstance may be put in evidence which tends to make the proposition at issue more or less probable. (*People v. Tate* (1978), 64 Ill. App. 3d 1, 12, 380 N.E.2d 976, 984.) However, the determination of whether evidence is admissible with regard to relevancy is within the discretion of the trial court and its decision will not be reversed unless the discretion has been clearly abused. See *People v. Martinez* (1979), 76 Ill. App. 3d 658, 663, 395 N.E.2d 124, 128; *People v. Thomas* (1979), 72 Ill. App. 3d 186, 201, 389 N.E.2d 1330, 1341.

■■ Here, the evidence concerning the shotgun shells was sufficiently relevant to warrant admission within the discretion of the trial court. The testimony showed that a shell found near the victim's body had an extractor mark comparable to that found on at least one shell seized at the time Bell's brother was arrested. Testimony provided by various witnesses established that this arrest took place at 11830 S. Indiana, in Chicago, Illinois, which is the address of Bell's parents' home. The shells were found in the basement of this home. Although defendant Bell did not reside at the Indiana address, he did use that address as his mailing address on various occasions, and he had access to his parents' home. In addition, Thomas testified that Bell was carrying a long-barreled gun at the time of the shooting. Under the circumstances, a reasonable inference could be made that the shell retrieved near the victim's body had been chambered in such a weapon.

We conclude that the totality of this evidence was sufficient to establish a connection between defendant Bell, the shotgun shells, and the murder. The evidence was sufficiently relevant to allow its admission within the discretion of the trial court.

■■ Defendant's argument that he was prejudiced by admission of this evidence because the jury found him guilty by association due to his brother's arrest is unfounded. The crime for which Bell's brother was arrested was not mentioned. A police officer testified that Bell's brother was still in custody at the time of the shooting involved here. This officer also stated that defendant was not present when his brother was arrested. Therefore, no prejudice inured to defendant Bell from the evidence regarding his brother. The trial court did not abuse its discretion in admitting this evidence.

The next argument presented by defendants is that they are entitled to a new trial because they were denied due process when the State concealed the surname of an eyewitness despite discovery requests for such information. However, defendants failed to include this contention in their post-trial motions, and therefore, the alleged error is waived. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Whittaker* (1978), 56 Ill. App. 3d 430, 433, 373 N.E.2d 30, 32.) Moreover, even if we consider defendants' argument on the merits, we do not agree with defendants' conclusion.

In her pretrial statement to the police, which defendants had available prior to trial, Audrianna Thomas identified her companion at the time of the shooting only as Robert; she did not state or report Robert's surname. During the trial, on direct examination, Thomas stated that her companion's name was Robert Anderson. Defendants moved for a mistrial on the basis that the surname of Thomas' companion had not been turned over to defendants pursuant to their discovery motions. It appears that the State learned Robert's surname about one day before Thomas testified, but did not inform defendants of his surname because it could provide no further information about him or his whereabouts. The trial court denied the motion for a mistrial. Defendants then moved that "depending on the rest of this direct examination and our cross-examination that we be given time to investigate this person's name, or this person, and to order the State to tender any type of information they have whatsoever as to his possible location, his possible address, anything that they have withheld." The State denied having any knowledge of Robert Anderson other than his name. The court decided to proceed and "see what happens." The entire examination of Thomas was completed, and the trial concluded without defendants making any request for a continuance or additional time to locate Anderson.

■■ Under the circumstances, we conclude that the trial court properly exercised its discretion in denying the motion for a mistrial, and that

defendants chose to proceed with the trial without a continuance or additional time by not making such a request after the cross-examination of Thomas was completed or at any other time. Also, we note that in addition to not claiming any error in their post-trial motions regarding the failure to furnish the surname of Robert Anderson, defendants filed a separate motion for a new trial based upon newly discovered evidence which did not include or allege anything regarding Robert Anderson. Accordingly, although the State should have supplied defendants with Robert Anderson's surname immediately upon obtaining that information, the error in not doing so does not require a reversal or new trial under the circumstances of this case. *People v. Watson* (1979), 76 Ill. App. 3d 931, 937, 395 N.E.2d 682, 686; see *People v. Madden* (1977), 52 Ill. App. 3d 951, 966, 368 N.E.2d 384, 396.

■■ Next, defendants contend that the trial court erred in refusing to grant a new trial based upon newly discovered evidence and a recantation of trial testimony. The trial court denied defendants' motions after conducting a post-trial hearing.

At the hearing, defendants presented affidavits and a nonoccurrence witness to support their contention that Audrianna Thomas testified falsely at the trial. We have reviewed the affidavits and testimony, and we conclude that the alleged newly discovered evidence relates to matters which could have been discovered prior to trial with the exercise of reasonable diligence, and its only effect would be to contradict testimony that was given at trial. Nothing produced by defendants at the hearing was of such probative force and credibility to warrant a conclusion that it would produce a different result in the case. It follows that the trial court properly denied defendants' motions based upon alleged newly discovered evidence.

■■ In their motions, defendants also contended that Audrianna Thomas recanted her trial testimony. The alleged recantation was based upon affidavits submitted by defense counsel. However, Thomas did not appear at the post-trial hearing, and no written statements signed by Thomas in which she recanted her testimony were submitted. In addition, the trial court granted defendants a continuance so that Thomas could testify, but she did not appear. Under the circumstances, we find no error in the trial court's denial of defendants' motions based upon their contention that Audrianna Thomas recanted her trial testimony.

Accordingly, the judgment is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.