THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID WOFFORD, Defendant-Appellant.

First District (3rd Division)   No. 84—1072

Opinion filed March 18, 1987.

Thomas C. Baratta, Jr., & Associates, of Elmwood Park (Thomas C. Baratta, Jr., of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Paula M. Carstensen, and Terrence J. Griffin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial, defendant, David Wofford, was convicted on two counts of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2)), and sentenced to 40 years in the Illinois Department of Corrections. Defendant appeals his conviction, contending: (1) he was denied a fair trial due to the cumulative effect of the trial court's conduct; (2)

the trial court committed error in allowing certain testimony into evidence under the "spontaneous declaration" exception to the hearsay rule, and (3) the evidence presented was not sufficient to prove defendant guilty beyond a reasonable doubt.

The facts of the case relevant to this appeal are as follows. At approximately 7:45 p.m. on March 3, 1983, a caller informed the police that gunshots had been fired and a man injured at 1314 West 90th Street in Chicago. When the police arrived at that address, several people confirmed that shots had been fired; however, they told the officers that those involved ran east on 90th Street. The police subsequently received a second call, informing them the possible victim was somewhere around 8937 South Elizabeth. There they found the victim, Harold Crawford, lying in the grass surrounded by a group of people.

Several minutes later, three Chicago police detectives arrived at the scene. Detective Joe Paladino approached the victim, determined his identity, and observed he was bleeding profusely from the abdominal area. Paladino testified that when he asked the victim who shot him, the victim responded, "Cheese shot me. He lives in the area of 92nd and Ada." When the ambulance still did not arrive after several minutes, the victim was taken by squad car to the hospital. He later died of a gunshot wound to the abdomen.

At the scene, the police spoke with Vincent James and David Brown, who were with the victim when he was shot. They explained that they went to the park to play basketball and, while there, James spent some time talking with his girlfriend. They left for awhile to go to the grocery store and then headed back to the park. As they walked, a green Thunderbird approached, and the driver shouted some gang slogans at them. They responded they were not affiliated with the gang. The driver proceeded, then stopped the car and got out. He spoke with three girls whom James, Brown, and Crawford saw and briefly spoke to earlier in the evening. As the three men passed the alleyway where the others were standing, a man identified as defendant came up to James and put a pistol to his face. James quickly walked away and, when he, Brown, and Crawford were around the corner, a car came by and the driver fired two shots, one of which struck Crawford. They described his car as a green, 1977 Ford Thunderbird, license plate number AV5760. The car was registered to the Wofford family near 92nd and South Ada Streets. The detectives drove James and Brown west on 90th Street and, when they reached Ada, the men indicated they saw two of the girls with whom the assailant was talking when he pulled a gun on James prior to shooting the victim. The girls told the detectives they did not know anyone named "Cheese" and,

further, knew nothing about the shooting. Detective Paladino drove to 92nd and Ada where James and Brown recognized a parked green Thunderbird. The detective testified that its hood and grill were still warm. He went to the address to which the car was registered. The woman who answered the door identified herself as Evertedine Wofford. When asked if "Cheese" was there, she responded that he recently had parked the car and left with the keys.

Later that evening James and Brown went to police headquarters where they each viewed six photographs. Both identified defendant as the victim's assailant. After the police made several visits to defendant's home without locating him, defendant turned himself in and was arrested on June 2, 1983. The police conducted two lineups; both James and Brown identified defendant as the person who shot the victim. The trial commenced on February 6, 1984. The jury returned a finding of guilt, and defendant appeals.

■ Defendant contends he was deprived of a fair trial because of the cumulative effect of the trial court's conduct in its comments before the jury. This issue could be viewed as waived because defendant failed to object at trial or set forth the matter in his post-trial motion. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181, 415 N.E.2d 1027.) At oral arguments, defense counsel claimed the matter was addressed in the post-trial motion; however, we have reviewed the document and do not believe the issue was raised. Although a counsel's failure to object has been recognized as an understandable trial tactic, courts have held that the failure to include the issue in a post-trial motion for a new trial, directed only to the court and therefore without risks of alienating the jury, is not excusable. (*People v. Saunders* (1984), 122 Ill. App. 3d 922, 936-37, 461 N.E.2d 1006; *People v. Christmas* (1977), 54 Ill. App. 3d 612, 615, 370 N.E.2d 65.) Nevertheless, because of the fundamental importance of a fair trial and the practical difficulties in objecting to comments of the trial judge, the general rule that an issue is waived because of defendant's failure to object at trial or assert the matter in a post-trial motion is applied less rigidly when the judge's conduct is the basis for the objection. (*People v. Heidhorn* (1983), 114 Ill. App. 3d 933, 936, 449 N.E.2d 568.) The trial judge must exert a high degree of care to avoid influencing the jurors. He must remain impartial and should refrain from displaying prejudice or favor to any of the parties. (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 403, 189 N.E.2d 295.) Therefore, in this situation we will consider the merits of defendant's argument.

Defendant initially complains that the judge erred during the *voir dire* when he informed prospective jurors:

"Mr. Wofford, known as the defendant here, is charged by the Grand Jurors. *He committed the offense of murder*, in that he, without lawful justification, intentionally and knowingly shot and killed Harold Crawford with a gun, *in violation of our statutes* of the Criminal Statutes of Chapter 38, Section. [*sic*]. That is count 1." (Emphasis added by defendant.)

Defendant alleges that the trial judge also committed error in explaining the presumption of innocence to the prospective jurors, when he informed them that the presumption remains until they have been "satisfied" by the evidence beyond a reasonable doubt of defendant's guilt rather than "convinced" by the evidence. He claims error when the judge informed prospective jurors that he was "the judge of the law" and that it was his duty to tell them the applicable law and what evidence they could hear. Defendant points to numerous instances during direct and cross-examination of witnesses in which he maintains the court reinforced testimony of prosecution witnesses, put words in witnesses' mouths, testified for and coached witnesses, argued with and demeaned defense counsel, and characterized testimony in a light favorable to the State. Defendant argues that when the defense called its witnesses, the court became very active, interrupting and ridiculing defense counsel and the witnesses.

■ The State maintains the trial judge did nothing more than try to conduct the trial in an orderly fashion by clarifying information and expediting questioning of the witnesses and at no time gave any indication as to his view of defendant's story. In one cited instance, the State notes, the court was restating the witness' answer at the request of defense counsel. In another, where defendant alleged the court interrupted and ridiculed defense counsel by asking the witness to repeat answers, the court likely believed the jurors were having difficulty hearing the witness, as were the court and attorneys. The State adds that the trial was peculiar in that problems in hearing the witnesses existed throughout the trial. The case also required that witnesses be cognizant of various directions and locations, which many were not. The State agrees with defendant's contention that it was inaccurate for the court to inform the jurors that they needed to be "satisfied" with the evidence rather than "convinced" by it to find defendant guilty. Nevertheless, where the jury receives proper instructions on the presumption of innocence at the close of all the evidence, prior misstatements are harmless. (See *People v. Bradford* (1979), 78 Ill. App. 3d 869, 876, 397 N.E.2d 863.) The State adds that before the judge made his remarks about the presumption of innocence, he informed the jurors his remarks were not instructions and that they would receive

written instructions at the close of the case. Thus, the State urges that the remarks amounted to nothing more than harmless error. The State further emphasizes that even if improper, the actions of the trial court were not reversible error because defendant failed to show that the actions and remarks harmed him or constituted a material factor in his conviction. The jury in the instant case also was instructed that any instructions, rulings, or remarks made by the court were not to be considered indicative of an opinion or reflective of what the verdict should be. Such a comment can be taken into account in determining any prejudicial effect. (*People v. Heidhorn* (1983), 114 Ill. App. 3d 933, 938, 449 N.E.2d 568.) The State adds that these remarks did not contribute to the conviction where, as here, defendant already was identified as the driver of the assailant's car and as the man who pointed the gun at and shot the victim.

Defendant is correct when he states that a judge acts improperly when he questions defense witnesses in a manner which emphasizes weaknesses and casts doubt on their veracity. (*People v. Tyner* (1964), 30 Ill. 2d 101, 104, 195 N.E.2d 675.) Error also is committed when the judge exceeds his function by taking an excessive and unnecessary part in the proceedings (*People v. Godbout* (1976), 42 Ill. App. 3d 1001, 1006-08, 356 N.E.2d 865) or when a judge questions the prosecution witnesses, serving to rehabilitate them and lend weight to their credibility (*People v. Crane* (1976), 34 Ill. App. 3d 850, 854-55, 341 N.E.2d 97). Also, where a judge interrogates witnesses and reiterates and emphasizes testimony pointing to guilt, in combination with a showing of hostility or impatience toward defense counsel, reversible error can be found. (*People v. Santucci* (1962), 24 Ill. 2d 93, 98-99, 180 N.E.2d 491.) Defendant argues that even if not improper when reviewed separately, the instances of the trial court's conduct when viewed cumulatively denied him a fair trial. See, *e.g., People v. Moriarity* (1966), 33 Ill. 2d 606, 613-14, 213 N.E.2d 516.

■ Not all improper comments, however, constitute reversible error. A defendant also must demonstrate the remarks were prejudicial and he was harmed by them. (*People v. Wells* (1982), 106 Ill. App. 3d 1077, 1086, 436 N.E.2d 688.) A judge's remarks must be a material factor in defendant's conviction or the prejudice to defendant must appear as their probable result. (*People v. Heidhorn* (1983), 114 Ill. App. 3d 933, 449 N.E.2d 568; *People v. Parker* (1976), 40 Ill. App. 3d 597, 605, 352 N.E.2d 394.) For example, where the court exhibits a hostile attitude toward defense counsel, implies his presentation is unimportant, or suggests it is made in an improper manner, prejudice and error may exist. (*People v. Ferguson* (1973), 11 Ill. App. 3d 914, 917, 297

N.E.2d 658.) Error also can be committed where the court expresses disbelief in the testimony of defense witnesses or confidence in the credibility of prosecution witnesses or when the court appears presumptive of defendant's guilt. *People v. Sprinkle* (1963), 27 Ill. 2d 398, 189 N.E.2d 295; *People v. Heidhorn* (1983), 114 Ill. App. 3d 933, 937, 449 N.E.2d 568.

■ We have reviewed the record with particular attention to the instances alleged by defendant as prejudicial to his cause. We believe the remarks by the court in these instances generally were either informative to the jurors as to the charges against defendant and the trial proceedings or clarification of specific testimony. In considering the possible prejudicial effect of the trial court's statements, we note that the jury was instructed by the judge, "Neither by these instructions nor by any ruling or remark I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be." Even if some of the remarks were improper, we view them as harmless error. We do not find evidence that the remarks individually or cumulatively so prejudiced defendant's cause as to be a material factor in his conviction. Further, the remarks do not appear prejudicial given the other evidence of defendant's participation in the crime.

■ Defendant next contends that the trial court erred when it permitted into evidence testimony regarding statements of the deceased as to who shot him. As mentioned earlier, Officer Paladino testified that he asked the victim who shot him and the victim responded, "Cheese shot me. He lives in the area of 92nd and Ada." Prior to the arrival of Paladino, another officer noticed the victim was frightened and hysterical. Defendant claims that the circumstances surrounding the statement removed it from the "spontaneous declaration" exception to the hearsay rule because, among other reasons, the victim made the statement at a location other than where the shooting took place, he made it in response to questioning, and he did not make it immediately after the occurrence.

In order for a statement to be admitted as a spontaneous declaration, the following factors must be present: (1) the occurrence of an event startling enough to produce a spontaneous unreflecting statement, (2) the absence of time to fabricate, and (3) the statement must relate to the startling event or condition. (*People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25, quoting *People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804.) Although the time elapsed between the occurrence and the utterance is material, the court must determine from the entirety of the circumstances whether time existed for reflection and invention. (*People v. Smith* (1984), 127 Ill. App. 3d 622, 627,

469 N.E.2d 634.) As to the distance the declarant traveled before making the statement, the court again will consider the surrounding events to determine whether the declarant deliberated in making a false statement. *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1053-54, 411 N.E.2d 61.

■ Applying all the above factors to the instant case, the State proposes that the trial court was correct in ruling the statement was admissible as a spontaneous declaration. In support of its position, the State cites *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 492, 434 N.E.2d 395, in which testimony that the victim was in great pain, shivering, and groaning was sufficient to establish he did not engage in reflective thought. Further, the court determined that asking the victim who committed the offense did not destroy the spontaneity of the response. (105 Ill. App. 3d 488, 491, 434 N.E.2d 395.) Additionally, in *People v. Wilson* (1980), 87 Ill. App. 3d 693, 702, 409 N.E.2d 344, the court looked to the totality of the circumstances in a rape case to determine that the victim was in such a state of continuing emotional upset so as to negate the possibility of a reflective thought process.

We agree with the State's position. In *People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25, the supreme court specifically indicated that a response to questioning is insufficient to destroy spontaneity. In *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804, the court also found that statements made at locations other than where the occurrence took place were admissible. The primary question to be addressed in such a situation was whether there was time for reflection and invention. (22 Ill. 2d 175, 181, 174 N.E.2d 804.) In the instant case, the testimony revealed that the victim was shot, ran down the street, and then collapsed. He was observed to be hysterical, in great pain, frightened, and bleeding profusely. We believe that the circumstances did not provide time for fabrication or reflection and invention. The factors necessary for the admission of the statement were present. Therefore, the court did not err in admitting the statement under the spontaneous-declaration exception to the hearsay rule.

■ Finally, defendant contends that the evidence presented was not sufficient to establish his guilt beyond a reasonable doubt. He maintains that the testimony of James and Brown was incredible, unbelievable, and conflicting. Defendant indicates that, as to the time of the incident, James and Brown differ by an hour. He alleges the two men could not have seen so well at approximately 7:30 p.m. on a March evening, that someone else could have been driving the car, and that the two merely wanted to revenge defendant because of jealousy over the girls to whom they had been talking. Further, he points out that

two of the girls testified the trio was swearing at them and carrying clubs. Defendant additionally alleges that it is beyond comprehension that an hysterical, dying boy would respond to Officer Paladino's question as the officer indicated he did.

The State, in contrast, points out that both Brown and James gave a description of the assailant's car, which they found minutes later parked near defendant's home with the hood and grill still warm. Also, defendant appeared in two lineups, posed in two different positions, and was positively identified on both occasions as the perpetrator of the crime. The State further notes that the witness, who testified she saw 15 to 20 boys carrying bats and sticks while shouting gang slogans, testified at trial that the boys came from a direction different than the one she had earlier indicated. Also, one of the girls stated the boys scattered in different directions, while another testified the boys walked in front of her and defendant.

The sufficiency of eyewitness testimony, the witnesses' credibility, the weight to be given the testimony, and the inferences to be drawn are within the province of the jury to decide. (*People v. Pearson* (1978), 67 Ill. App. 3d 300, 310, 384 N.E.2d 1331, *cert. denied* (1980), 445 U.S. 960, 64 L. Ed. 2d 235, 100 S. Ct. 1645.) We will not disturb the jury's determination unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Randall* (1980), 84 Ill. App. 3d 888, 893, 405 N.E.2d 1269.) Any discrepancies in the testimony of James and Brown could possibly be explained as differences in the knowledge of the two or the way they interpreted questions asked of them. What was important was that their statements regarding identification were positive and consistent. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 827, 447 N.E.2d 1029.) As to defendant's argument that James identified defendant as "Cee" and "T" before being told by the prosecutor the name was "Cheese," we note that he never wavered in his identification of defendant as the assailant even if there was confusion as to his name. (*People v. Miller* (1981), 98 Ill. App. 3d 453, 456, 424 N.E.2d 624.) We have examined the record and believe that, viewed as a whole, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

For all the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P.J., and WHITE, J., concur.