THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID RICHARDSON, Defendant-Appellant.

Fifth District   No. 75-288

Opinion filed October 4, 1976.

Ralph Ruebner, Michael M. Mulder, and J. Daniel Stewart, all of State Appellate Defender's Office, of Elgin, for appellant.

Donald E. Irvin, State's Attorney, of Mt. Vernon (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant David Richardson appeals from a judgment of the circuit court of Jefferson County, finding him guilty of indecent liberties with a child, after a jury trial.

Defendant, age 28, was charged with having sexual intercourse with a child under the age of 16 years on May 18, 1974. The intercourse was alleged to have occurred under the following circumstances. Bert Adcock, who lived a short distance from the home of the complaining witness, came to the complaining witness's house and asked if she could baby-sit on the night of May 18, 1974. Permission was given, and while the complaining witness was at the Adcock home she was given some drinks of alcoholic beverages and shown pornographic movies. The Adcocks then left, leaving the complaining witness alone with the defendant who seduced her. The testimony elicited throughout the trial was in direct conflict as to the events on the date in question, defendant testifying that he was at work and the complaining witness giving a full account of various sexual acts on that date.

Defendant cites many instances of reversible error committed by the prosecution in the trial of this case which he claims entitle him to a new trial.

The defense called L. C., who testified that she was 14 years of age and attended Casey Junior High School. She stated that she knew the complaining witness and that on May 17, 1974, she was walking home from school with her, when the complaining witness told her that she might be pregnant, but did not say by whom.

■■ On cross-examination the State's attorney asked L. C. if she had a brother and whether he had been in any trouble. She replied that her brother Joe had been in trouble for breaking into parking meters. The defense counsel at this point objected stating that they were not trying the issue of her brother or her family relations. The State's attorney told the court that he thought he could tie it in and the court overruled the objection. The State's attorney then asked L. C. if her brother had assisted in an armed robbery. The defense again objected and the State's attorney argued that he was showing bias on the part of a witness against the State of Illinois. The court said it would hear the testimony. The witness was then questioned by the State's attorney concerning the details of her brother's conviction for armed robbery and also had her read her brother's statement concerning the crime. After the reading of the statement, the defense moved that all the testimony be stricken and that the jury be ordered to disregard it. The State's attorney argued that the testimony showed bias on the part of L. C. and should be weighed by the jury in evaluating the credibility of her testimony. The court ordered the testimony stricken and that the jury be directed to disregard it. The trial court's ruling came too late to remove the damage caused by this episode.

During the cross-examination of the defendant, the State's attorney asked him if he had ever had sexual relations with anyone else and the following took place:

"Q. Have you ever had sexual relations with anyone else?

Defense Counsel: I object to that.

The Court: Let him finish his question.

A. No, I haven't.

Q. You have not?

The Court: The jury may not have heard the question.

Defense Counsel: I object to the question and the answer and ask that it be stricken.

The Court: Let's hear it. You interrupted before he could finish his question.

State's Attorney: My question to you, sir, at the time that [the complaining witness] was present, have you ever had sexual intercourse with any other person?

A. No, sir.

Q. You have not?

A. No, sir.

* * *

Q. Do you have any idea as to what possible motivation that this young girl could have to come into this courtroom and accuse you of being the father of her child, of all men in the universe?

A. No, sir.

Q. I don't either, sir. You're not a man that she could expect—"

■■ There can be no question but that the inquiry as to whether the defendant had ever had sexual relations was completely irrelevant to the issue in this case. Also, the statement of the State's attorney, although stricken by the trial court, was inexcusable misconduct.

Another instance of misconduct on the part of the State's attorney occurred when he attempted to destroy the credibility of the defense witnesses with the following.

■■ The defense had corroborated the testimony of the Adcocks through the testimony of Mrs. Adcock's brother, Arthur Sharp. Mr. Sharp was an important witness for the defense since he testified that the Adcocks brought their daughter to his house so they could go out on May 18, 1974. His testimony corroborated the Adcocks' testimony and was in direct contradiction with the complaining witness's testimony that the Adcocks were home on May 18, 1974, with their daughter. The State's attorney attempted to destroy Mr. Sharp's credibility with the jury through the following questions:

"Q. Mr. Sharp, do you have a criminal record?

A. No, sir.

Q. Have you ever been arrested?

A. No, sir.

Q. Any close friends or relatives that have been arrested?

A. No, sir."

This was an improper attempt to show that Sharp was biased against the prosecution. Nowhere in the trial did the prosecutor support these questions with evidence that Sharp had been convicted and was biased against the prosecution. The sole purpose then, in asking the questions, was to prejudice the jury against the defendant's witnesses.

The same type of insinuation was made on cross-examination of Tom Hughey, the defendant's brother-in-law. Mr. Hughey had testified that he and his wife had stayed with the defendant's wife on the night in question until the defendant returned home from work at about 9:30 p.m. The prosecution's first question of Mr. Hughey was, "Do you have a criminal record, sir?" Again there is nothing in the record to show that the

prosecution had evidence of any prior criminal record. Yet that insinuation was left in the minds of the members of the jury.

■■ The final instance of improper impeachment through innuendo was during the cross-examination of Don Adcock, Bert Adcock's brother. Don Adcock had corroborated the Adcocks' testimony that the defendant and the complainant were not present on May 18, 1974. The State's attorney asked:

"Q. Now you are aware, are you not, that as a result of the investigation, Bert and Connie Adcock may be subject to criminal prosecution, is that correct?"

An objection to the question was sustained, but the damage was already accomplished.

■■ There also were numerous instances of inadmissible hearsay in this case. The complaining witness's father, mother, and doctor testified that the complaining witness told them in the latter part of June 1974, that she was pregnant because of having intercourse with the defendant on May 18, 1974. The mother testified that she then took a shotgun to the home of the Adcocks, called the Adcocks and Mr. Adcock's brother from the house, pointed the shotgun at them and accused Mr. Adcock of having intercourse with her daughter. She testified that Mrs. Adcock told her that her husband did not do it, but rather it was the defendant who had sexual relations with her daughter.

■■ For the foregoing and many other errors committed during this trial, the judgment of the circuit court of Jefferson County is reversed and this case is remanded for a new trial.

Reversed and remanded.

KARNS, P. J., and EBERSPACHER, J., concur.