THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EARL E. MARTINEZ, Defendant-Appellant.

First District (1st Division)    No. 78-79

Opinion filed September 17, 1979.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Paul C. Grindelli, and Cary J. Wintroub, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a bench trial, the defendant Earl Martinez was convicted of burglary and sentenced to a term of imprisonment of 2 to 6 years. Defendant now appeals from the conviction. Defendant first contends in this appeal that his conviction must now be reversed because the prosecution failed to prove that he entered the building with the intent to commit a theft. Defendant next argues that the trial court committed numerous errors which necessitate a new trial. Defendant argues that the trial court, in asking defendant several questions, improperly assumed the role of prosecutor; that he improperly allowed the State to elicit from the defendant details of a prior conviction; and that he erroneously sustained an objection by the State to a question asked one of the investigating officers on cross-examination. Defendant's final contention of error in this appeal is that the trial judge erred in refusing to require the State to produce a certified copy of defendant's conviction in aggravation.

We affirm.

The first two witnesses called by the State, Officer William Bagnole and Sergeant Ronald Rentner, testified that at about 2:30 a.m. on September 3, 1977, they responded separately to an alarm from the Consolidated Stamp Company building at 7220 West Wilson Avenue.

Several other police officers including a canine unit from the Chicago Police Department also arrived at the scene. Neither Officer Bagnole or Sergeant Rentner entered the plant, but they both observed the canine officers leaving the plant with the defendant in custody. Both Officer Bagnole and Sergeant Rentner searched the defendant but recovered nothing from him. Neither policeman knew of any property missing in the building. Officer Bagnole knew there were typewriters and papers in the office area of the building.

Also called by the State to testify at trial was Officer Richard Kary, a member of the Chicago Police Department canine unit. Officer Kary and his partner Officer Bell arrived at the plant with their two police dogs at approximately 3:45 a.m. They entered the building and on several occasions identified themselves as police officers and ordered everyone out of the building. On each occasion they received no response. After searching for 45 minutes, Officer Kary entered the loading area. He looked inside a van in the loading area and noticed the defendant lying underneath the rear seat. Officer Kary opened the rear door of the van and his dog jumped inside and began pulling on the defendant. Officer Kary immediately placed the defendant under arrest. When the officer first observed the man in the van he was unable to tell whether he was asleep or awake. Kary admitted he did not notice any merchandise in the van and nothing was recovered by his partner after a search of defendant Martinez.

Also called by the State were two employees of the Consolidated Stamp Company. Eugene Bruno, a company repairman, testified that the defendant was employed as a machine operator and that his hours of employment were 8 a.m. to 4:30 p.m. Bruno indicated that the factory was closed during the early morning hours. Bruno further stated that he saw desk drawers open in an office adjoining the room with the broken window. The other employee, John Mikita, a staff accountant, testified that petty cash funds were kept in a box in the personnel office which was adjacent to the office where the window had been broken. The money, however, had been removed from that box during a previous burglary. Mikita knew of no one who gave Martinez permission to be in the plant during the early morning hours of September 3, 1977.

At the close of the State's case, the defendant took the stand in his own behalf. The defendant indicated that after work on September 2, 1977, he went to a bar at Belmont and Osceola where he drank 10 or 12 beers during a two-hour period. The defendant then picked up his girl friend and together they went to another bar at Belmont and Oleander. The defendant continued drinking at this second bar until 12:30 or 1 a.m. when he took his girl friend home. He returned to the second tavern where he remained until closing time. The defendant then bought a

12-pack of beer and went to a friend's house near the factory. From his friend's house the defendant went to the stamping factory where he entered through a door built into an overhead door in the dock area. The defendant indicated that he entered with a key he had taken three months earlier from a hook on a wall inside the factory. He testified that he had shown the key to Officer Kary. The defendant explained that since he owned no car and was a long way from home, he entered the plant to get some sleep as he had done on prior occasions. After entering the van, the next thing the defendant remembered was one of the dogs from the canine unit biting him. Martinez testified he did not enter the office area of the plant, did not break the front window and did not intend to take anything from the plant while inside. He stated he chose to sleep in the van because it was carpeted and clean.

Officer Bagnole was called by the State in rebuttal. He indicated that he detected no odor of alcohol on the defendant, that the defendant was in full control of his faculties, and that the defendant had no difficulty walking. Officer Bagnole further testified that he did not recover a key from the defendant but that he did not personally search the defendant.

Also called by the State in rebuttal was Eugene Bruno. He testified that there were no service doors built into the overhead doors. On surrebuttal Mr. Bruno did indicate that there was a small door cut into the overhead door, but that there was a wall which backed up to the door and that the space between the door and wall was filled with insulation.

■■ The defendant first contends that the State failed to prove that he entered the building with the requisite intent to commit a theft. As stated in *People v. Loden* (1975), 27 Ill. App. 3d 761, 762, 327 N.E.2d 58, 60:

> "Ordinarily intent must be proved circumstantially by inferences drawn from conduct. In the absence of inconsistent circumstances, proof of unlawful entry into a building which contains person[al] property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. The inference is grounded in human experience which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose."

Defendant argues that in the instant case there exist circumstances inconsistent with the intent to commit a theft. Defendant relies on his own testimony which he contends was not contradicted in any substantial degree by the State's evidence. We disagree. The defendant testified that he used a door cut into an overhead door to gain access to the building the day of his arrest as well as on numerous other occasions. Eugene Bruno, however, indicated that access through that door was practically impossible because immediately behind the door there was insulation and an eight- to 10-foot wall. Defendant testified that he had been drinking

heavily that evening but Officer Bagnole observed none of the effects of alcohol on the defendant when he apprehended him. Defendant also testified that he never entered the room adjacent to the office containing the broken window. It was apparent, however, from the testimony of the State's witnesses that somebody entered that room and opened a desk drawer that formerly contained petty cash. The defendant also testified that he entered the premises with a key and that he showed the key to Officer Kary. However, none of the police officers who searched defendant recovered a key. The only evidence tending to establish circumstances inconsistent with the inference of intent to commit a burglary is the testimony of the defendant himself. That testimony was implausible and contradicted by the testimony of the State's witnesses. There is no question that the trial court disbelieved the defendant's testimony. As a result, there is no evidence which tends to overcome the inference that theft was the likely purpose of defendant's entry into the factory.

■■ Defendant next urges that the trial court committed three specific errors and that the cumulative prejudicial effect of these errors necessitates a new trial. (See, for example, *People v. Richardson* (1976), 42 Ill. App. 3d 663, 356 N.E.2d 583.) We first note, as the State points out, that defendant raised none of these supposed errors in his motion for a new trial and as a result has waived those contentions of error. (*People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 337 N.E.2d 454.) However, we will briefly address ourselves to each of these issues.

■■ ■ The first contention of error is that the trial court improperly assumed the role of prosecutor in questioning two witnesses. The first witness, Mr. Mikita, testified on cross-examination that the night foreman had keys to the back door employee entrance. On redirect Mr. Mikita was not sure if the foreman had keys to the office area. The trial court asked several questions of Mr. Mikita and established that the night foreman had no key to the personnel office. The second witness questioned by the trial court was the defendant himself at the end of surrebuttal. In response to the court's questions, the defendant indicated that he had been searched and that he had given the key with which he gained access to the building to one of the officers of the canine unit. The trial court, within its discretion, has the right to question witnesses in order to clarify material issues. (*People v. Palmer* (1963), 27 Ill. 2d 311, 189 N.E.2d 265.) However, the trial court abuses that discretion when he assumes the role of prosecutor in proving material elements in the State's case. (*People v. Rogers* (1974), 18 Ill. App. 3d 940, 310 N.E.2d 854.) We find no abuse of discretion in either of the above two instances that defendant cites. The trial court's questions sought clarification on certain obscure and material issues. The court never assumed the role of prosecutor. Indeed,

clarification of those critical issues could have assisted the defense and resulted in defendant's acquittal.

The second contention of error defendant raises in support of his argument that he should be granted a new trial concerns the trial court's ruling which prohibited the defense from inquiring of Officer Bagnole whether it was "customary in investigating a burglary to look for that smell of alcohol on a person." It is well established that questions concerning the admission of evidence are within the discretion of the trial court and that its decision should not be reversed unless such discretion has been clearly abused. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) We believe the above question of little probative value and can see no clear abuse of discretion in the trial court's ruling sustaining the State's objection to the above question. Moreover, we believe the trial court's ruling caused little prejudice to the defendant. Called in rebuttal, Officer Bagnole testified that he spent two minutes next to the defendant and that the defendant had little difficulty walking and was responsive to questions. Even had the trial court allowed the question and Officer Bagnole answered in the negative, it would have had little effect in impeaching the above testimony.

■■■ The final argument defendant presents in support of his contention that he is entitled to a new trial is that the trial court erred in allowing the State to elicit from the defendant details concerning his prior conviction. Defendant notes that over his objection the State was permitted to question the defendant as to the sentence he received and the place of incarceration, the fact that the defendant was placed on probation and that his probation was revoked. Without passing on the propriety of the trial court's action, we conclude that the above ruling does not necessitate a new trial because even if erroneous it did not prejudice the defendant. Defendant's prior conviction was already admitted by way of stipulation and for the purpose of impeaching defendant's credibility. Defendant argues that the additional details of the conviction were improperly considered by the trial court as affirmative proof of defendant's guilt. We disagree. The instant trial was a bench trial and consequently it is presumed, unless it affirmatively appears otherwise in the record, that the trial court considered only proper evidence in rendering his judgment. (*People v. Robinson* (1964), 30 Ill. 2d 437, 197 N.E.2d 45.) There is absolutely no affirmative indication that the trial court considered the details of defendant's conviction as proof of defendant's guilt. Even if defendant is correct in arguing that the details of his conviction were improperly admitted, such error would at most be harmless. There is nothing in the record to indicate that the trial court considered these details for any purpose other than impeaching defendant's credibility. Such details had no substantial impact on defendant's credibility beyond

the fact of the conviction itself, a fact to which defendant had already stipulated.

■■ Defendant's final argument that the trial court erred in overruling his objection to the State's oral representation at the hearing on aggravation and mitigation that the defendant had previously been convicted for burglary and had been sentenced to three years probation. The defendant, although acknowledging that the above information was contained in the presentence investigation report, contends that since he raised an objection it was incumbent upon the State to produce a certified copy of his conviction. Without approving or disapproving of the procedure followed by the trial court, we fail to see any prejudice suffered by the defendant as a result of such procedure. The defendant fails to point to any representation by the State or to any place in the presentence investigation report which is inaccurate. Additionally, the information concerning defendant's prior conviction was already before the court due to the stipulation entered into at trial and due to defendant's cross-examination testimony concerning his prior conviction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.