THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD LEMONS, Defendant-Appellant.

First District (4th Division) No. 1—87—3171

Opinion filed December 28, 1989.—Rehearing denied January 22, 1990.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and William D. Carroll, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Edward Lemons, was charged with burglary and possession of burglary tools. Following a jury trial he was convicted of burglary and acquitted of possession of burglary tools. He was sentenced to 20 years' imprisonment.

On appeal, Lemons challenges the admission of what he characterizes as hearsay identification testimony. He also asserts that the trial court deprived him of a fair trial by instructing the jury that a witness' prior inconsistent testimony could only be considered for impeachment purposes and not as substantive evidence. He further argues that the trial court made a comment that, in effect, adopted the State's version of the case and assumed his guilt. Finally, Lemons challenges the sentence as exceeding the statutory ceiling for an extended term. On this last point, the State concedes that 14 years is the maximum term that Lemons can be sentenced to under the relevant law.

We affirm the conviction and reduce the sentence to 14 years' imprisonment.

BACKGROUND

In the early morning hours of February 17, 1987, Michael McCall left his apartment to investigate after a neighbor told him someone was burglarizing his mother-in-law's 1971 Chevrolet Impala. He observed the back of a man bent over the steering wheel, noting that he wore a dark, dirty jacket and a half-torn sweatshirt. McCall went back inside his apartment and telephoned police. Shortly thereafter, he saw police cars arrive and saw a man running down an alley.

Officers Michael Decker and Robert Weisskopf arrived on the scene. Weisskopf heard a scraping sound from across the street and slightly behind the burglarized car. He ordered the person to come out from underneath the car. The person was Lemons, who appeared to be intoxicated. Weisskopf found no weapons on him but he did recover a woman's glove, a man's glove, and some tools and a flashlight.

McCall and Officer Decker inspected the Impala for damage, noting that a small piece of the steering column was missing and that there were scratch marks on the left side. McCall testified that he noticed tools on the floor of the car, some of which were his and others which were not. Some of his were missing. He also found two children's coats that were not his, one of his wife's gloves, and one man's work glove.

At trial, Weisskopf testified that the two gloves he took from defendant matched two that were in McCall's car. The woman's glove

was identified as belonging to Theresa McCall. Weisskopf also testified that McCall told him he saw two offenders.

At the preliminary hearing McCall testified first that he saw the police recover the glove from Lemons but admitted that he did not actually see the police take the gloves from Lemons. He stated that he did not have personal knowledge that Lemons was in possession of them. At trial he testified that as Weisskopf led Lemons to the squad car, Weisskopf turned toward Lemons, took something from him, and then showed McCall the woman's glove. Defense counsel sought to have McCall's prior statements admitted as substantive evidence. The court refused a modified jury instruction, however, and allowed the statements to be considered only in assessing McCall's credibility.

Lemons did not testify in his own behalf because his motion *in limine* to bar use of prior convictions was denied. He presented two defense witnesses, his brother-in-law and a female friend. Sonny Chambers testified that he was with Lemons all day before the incident and that during the approximate time of the burglary, he and Lemons were driving around looking for the address of someone Chambers knew. Lemons jumped out of the car and said he was going to catch a bus because of an argument they were having. Shortly thereafter Chambers heard an alarm, someone hollering, and two gunshots. He saw two people running on the opposite side of the street from where he was and got out of the car to look for Lemons.

Anna Sanders testified that after his arrest Lemons asked her to take pictures of the burglarized car and six of these were submitted to the jury.

The jury found Lemons not guilty of possession of burglary tools but guilty of burglary of an automobile. The court sentenced him to an extended term of 20 years in prison.

OPINION

I

Lemons first challenges as plain error the admission of Officer Weisskopf's statement that when he pulled Lemons out from under the car across the street from McCall, McCall said, "That is him." He contends that McCall did not specifically identify Lemons as the person he saw burglarizing the car. Instead, he testified that the man he saw was big and muscular, and that he did not see Lemons until the police brought him out from under the car across the street. According to Lemons, Weisskopf's statement violated his sixth amendment right to confront witnesses. He asserts that he was wrongly denied

the opportunity to cross-examine the declarant, whose statement was offered to prove the truth of the matter asserted, citing *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223. In *Rogers* the court held that a third person may not testify as to a witness' identification of the defendant, unless the witness himself first testifies as to his out-of-court identification and is subject to cross-examination.

The State counters that the legislature abridged the rule in *Rogers* by the enactment of section 115—12, of the Code of Criminal Procedure of 1963, which addresses substantive admissibility of prior identification. The section provides:

> "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." Ill. Rev. Stat. 1987, ch. 38, par. 115—12.

In *People v. Holveck* (1988), 171 Ill. App. 3d 38, 52, 524 N.E.2d 1073, 1083, the court noted that "in response to *Rogers* the Illinois legislature enacted section 115—12." The *Holveck* court held that "by the plain terms of this enactment the substantive use of testimony concerning out-of-court identifications is now permissible without regard to the existence of an in-court identification." (171 Ill. App. 3d at 52, 524 N.E.2d at 1083.) The court also quoted an excerpt from the Handbook of Illinois Evidence, which included this comment on the admissibility of out-of-court identifications:

> "[P]rovided the declarant testify at trial and be subject to cross-examination concerning the prior statement of identification of a person made after perceiving him, *** declarant's prior statement of identification is admissible as substantive evidence when testified to by a witness to the identification, such as a police officer, even when the declarant at trial denies making or repudiates the identification and denies that the defendant was involved in the crime." E. Cleary & M. Graham, Handbook of Illinois Evidence §611.16 at 405-06 (4th ed. 1984).

In the pending case, McCall described the man he saw in the automobile, whose face he could not see. He assumed that the man under the car across the street, Lemons, was the same man that he had seen in the Impala very shortly before. Lemons is big and muscular, as was the man he saw in the car. Lemons' clothing matched the description of the clothes of the man McCall saw in the car. In this context, Weisskopf's testimony that McCall said, "That is him" when he saw Lemons may be viewed as an inference McCall made at the

time that the man he had just seen in the Impala was the same man the police apprehended at the scene of the crime. Therefore, McCall's statement to Weisskopf qualifies, under section 115—12(c), as a prior "statement of identification of a person made after perceiving him." The rule does not require that the person making the identification have a full face view of the offender. McCall did testify at trial and was subject to cross-examination as to his ability to identify Lemons. If the defense wished to have McCall recalled after Weisskopf's testimony, to cross-examine McCall on the statement attributed to him, it could have done so. Defendant had previously cross-examined McCall to emphasize that McCall did not see the face of the man in the car, that the lighting was poor, and that his identification of Lemons was limited to his being the one the police apprehended at the scene. Of course, if the defense asked McCall about his purported statement to Weisskopf and he admitted making the statement to Weisskopf, it would hurt Lemons' case. As it stood, defendant had the opportunity in closing argument to impugn Weisskopf's credibility by pointing out that McCall never admitted on the stand to recognizing Lemons as the same man he saw earlier in the car. Accordingly, we believe that any error in the admission of Weisskopf's statement is harmless.

## II

■ Lemons next argues that he was denied a fair trial because the court instructed the jury that certain statements made by McCall would only be considered for impeachment value and not as substantive evidence. Specifically, he refers to McCall's inconsistent remarks concerning whether or not he saw the police actually remove the glove from Lemons. At trial, McCall testified that as the police led Lemons to the squad car, Weisskopf turned to Lemons and then showed McCall a glove exactly like his wife's. On cross-examination he said he saw the police "turn around toward the gentleman, take something from him, turn back around and show [McCall] the glove." According to Lemons, these trial statements are contradicted by the preliminary hearing testimony of McCall's. When asked if he saw the police take the gloves off Lemons, he replied, "No, I didn't." He was then asked if he knew from personal knowledge if Lemons was in possession of the glove and responded, "No, I don't."

We do not find that the trial testimony and that given during the preliminary hearing are actually contradictory. During the preliminary hearing he identified Lemons as the perpetrator, testifying that he saw him in the car. He admitted that he did not see the man's face, but he described his clothes. He also stated that he was present when

the police pulled Lemons out from another car. He testified that he saw the police recover the glove from Lemons, but on cross-examination he admitted that he did not actually see the police remove the glove from Lemons. He clarified this on redirect by stating that he was behind Lemons and the officer and that the officer got something that he showed McCall, which was the glove. McCall testified that he did not know whether they took it from his pocket and did not directly observe from where the glove was taken.

The trial court determined that, to the extent McCall's statements were inconsistent, the jury would be allowed to consider them as impeaching McCall's credibility. Nevertheless, he refused an instruction that would have allowed the prior statements to be admitted as substantive evidence.

We find this to be well within the trial court's discretion, particularly since the use of the testimony as either impeachment or substantive evidence would tend to have the same result: either he directly saw the glove being removed from Lemons (which he admitted he did not), or he indirectly saw it being removed from Lemons (which seems to be the meaning of his statements, taken together). In other words, the difference in the statements is whether he knew, from direct observation, that Lemons had the glove or whether he inferred from the circumstances that the police took the glove from Lemons. We see no prejudice resulting from the court's ruling. In considering the statements the jury could have doubted McCall's perception of the events; found that he was disingenuous; or determined that McCall simply did not have personal knowledge that the police took the glove from Lemons. That would not translate, however, into substantive evidence that the police did *not* take the glove from Lemons. We conclude that Lemons was not denied a fair trial as a result of the court's ruling on this issue.

### III

Lemons' third argument in support of his request for a new trial concerns a comment that the judge made during examination of Officer Weisskopf. The State was attempting to elicit testimony as to why the officer had not searched for a possible second offender, who was never apprehended. McCall had earlier testified that he saw a person running down the alley at the time the police cars were arriving on the scene. The court had sustained defendant's objection to the State's attempt to ask McCall whether he thought the person running down the alley was the "lookout." When defendant objected to the questioning of Officer Weisskopf regarding why he did not search for

the second person, the court told the State, "That is enough of that. That is enough." The prosecutor then said he had no further questions, and the court stated, in the jury's presence, "I think the second offender allegedly escaped, whoever it was." The prosecutor replied, "Right."

Lemons now charges that this isolated comment was "a blatant adoption of the State's theory of the case." According to the defense, if the person seen running down the alley was relevant at all, the jury was faced with deciding one of only two alternatives. Either Lemons was innocent, because one person committed the burglary and escaped, or Lemons was guilty because two people were involved in the burglary and one got away. The judge's comment, according to Lemons, is a "de facto determination of Edward Lemons' guilt" because he adopted the State's theory of two offenders.

 █ We cannot agree with defendant's interpretation. It is true that judicial comments indicating personal belief or disbelief in the credibility of witnesses are improper because they invade the jury's province. (E.g., People v. Marino (1953), 414 Ill. 445, 111 N.E.2d 534.) In the pending case, however, there was testimony regarding someone other than Lemons seen fleeing down the alley at the time the police were arriving. The State's theory did not depend on the existence of a second offender because McCall's testimony and the recovery of the glove were sufficient to establish Lemons' guilt as the person inside of the burglarized automobile. If anything, the existence of a second potential offender gave the defense a better argument: that other person was the sole offender, or at least created a reasonable doubt that the man responsible for the burglary was Lemons. Accordingly, we fail to see how the court's comment, made in the context of the State's questioning a witness as to the existence of a second offender, prejudiced Lemons. The one word in the comment that may be objectionable is "offender," and the word "allegedly" suggests that the court was using the State's theory hypothetically, rather than adopting it as a reflection of its own belief. Had the court said the "other man" instead of "offender," Lemons would have no argument at all.

Moreover, we note that Lemons' attorney did not object to this statement when made. This is not a situation where such an objection would likely antagonize the court to the detriment of the defendant, either, as was an issue in People v. Sprinkle (1963), 27 Ill. 2d 398, 189 N.E.2d 295. Here, had defense counsel requested the court during a side bar to clarify his comment to the jury and expressly disclaim any personal belief as to the existence of such "second offender," any mis-

apprehension would have been cured. We conclude that the comment did not deny Lemons a fair trial and that by failing to object and give the court an opportunity to clarify the remark, he waived the argument. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

### IV

■ As a final matter, the State concedes that Lemons was incorrectly sentenced to a term of 20 years, as an extended term. Under the law in effect at the time Lemons was convicted of burglary of an automobile, the extended term allowable for the offense was 14 years. Accordingly, we reduce the sentence imposed to 14 years.

For the foregoing reasons, we affirm the conviction of Edward Lemons and modify the sentence.

Affirmed as modified.

JIGANTI, P.J., and JOHNSON, J., concur.